ROBERT F. BURNS, Appellant, *v.* HARRY R. WILKINSON, Respondent.

Torts — action for malicious prosecution — probable cause — evidence — when jury justified in finding affirmatively that probable cause for plaintiff's arrest did not exist.

1. In an action for malicious prosecution the propriety of defendant's conduct in causing plaintiff to be indicted is to be decided by the facts as they appeared to be at the time the prosecution was instituted, and the question is whether these facts as they then appeared were such that a discreet and prudent person would have been led to the belief that the accused had committed the crime with which he was charged.

2. Plaintiff was arrested on the complaint of the defendant, the charge being larceny as defined in section 1293-a of the Penal Law.   The plaintiff was held for the grand jury, indicted upon the defendant's testimony and subsequently acquitted.   Thereupon he brought this action for malicious prosecution.   He obtained a judg-

8

ment which has been reversed by the Appellate Division, not on the facts, but because it was said that, as a matter of law, the defendant had probable cause for his action. The arrest arose out of the fact that plaintiff, who was employed in a garage to shift cars, had taken defendant's car out of the garage late at night and, while it was standing on the street near the garage, was found attempting to start it. The defense was that the plaintiff had taken the car out so as to make room for his work inside and that he was then about to drive it back and put it in its place. *Held*, that the jury might find affirmatively that probable cause for the arrest did not exist; hence the judgment of the Appellate Division must be reversed and that of the Trial Term affirmed.

*Burns* v. *Wilkinson*, 181 App. Div. 949, reversed.

(Argued January 27, 1920; decided February 24, 1920.)

APPEAL from a judgment, entered January 15, 1918, upon an order of the Appellate Division of the Supreme Court in the second judicial department reversing a judgment in favor of plaintiff entered upon a verdict and directing a dismissal of the complaint.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Walter E. Warner* for appellant. The Appellate Division having reversed judgment and dismissed the complaint, it must be conclusively presumed that the judgment was not reversed upon a question of fact. (*Cannon* v. *Fargo*, 222 N. Y. 321; *Conway* v. *Naylor*, 222 N. Y. 437; *Faber* v. *City of New York*, 213 N. Y. 411.) The issue of probable cause was rightfully submitted •to the jury. (*McMorris* v. *Howell*, 89 App. Div. 272; *Carl* v. *Ayers*, 53 N. Y. 14; *Nenowich* v. *Cohen*, 158 N. Y. Supp. 344; *Scott* v. *Dennett*, 51 App. Div. 321; *Heyne* v. *Blair*, 62 N. Y. 19; *Parr* v. *Loder*, 97 App. Div. 218; *George* v. *Johnson*, 25 App. Div. 125; *Hamilton* v. *Davey*, 28 App. Div. 457.)

*Clifton P. Williamson* for respondent. The question of the presence or absence of probable cause was one for the determination of the court. (*Burt* v. *Smith*, 181 N. Y. 1; *Rawson* v. *Leggett*, 184 N. Y. 504.)

Andrews, J. The plaintiff was arrested on the complaint of the defendant, the charge being larceny as defined in section 1293-a of the Penal Law. This complaint was pressed before the committing magistrate. The plaintiff was held for the grand jury, indicted upon the defendant's testimony and subsequently acquitted. Thereupon he brought this action for malicious prosecution. He obtained a judgment which has been reversed by the Appellate Division, not on the facts, but because it was said that, as a matter of law, the defendant had probable cause for his action.

Assuming as we must, therefore, the truth of the plaintiff's story, giving him the benefit of all the inferences to which a jury might say he is entitled and resolving all disputed points in his favor, we must determine whether this conclusion was justified, or whether there was involved a question of fact.

" The propriety of defendant's conduct in causing him to be indicted is to be decided by the facts as they appeared to be at the time the prosecution was instituted, and the question is whether these facts as they then appeared were such that a discreet and prudent person would have been led to the belief that the accused had committed the crime of which he was charged. If defendants had knowledge of facts actual or apparent strong enough to justify a reasonable man in the belief that they had lawful grounds for prosecuting the plaintiff in the manner complained of, then probable cause was present and this action will not lie." (*Rawson* v. *Leggett;* 184 N. Y. 504, 511.) What facts then were present in Mr. Wilkinson's mind when he made this charge?

For some years he had kept his car in a garage in which a number of other private cars were stored and which also accommodated some transient customers. The storage room itself was forty feet wide and eighty feet long approached from the street by a narrow hallway. As one entered it to the right smaller cars were placed

facing the wall. To the left six larger cars, among which was the defendant's, were placed in a double row parallel with the side wall. In front was a wash rack and on one or both sides of it was a place for two other cars. When the garage was full this left an aisle or runway through the center of the room from the hall to the wash rack about ten feet wide. The defendant's car was seven feet and seven inches in width and there was, therefore, small clearance on each side.

On the evening of January 13, 1916, the plaintiff had been employed in this garage for several weeks. He was a night washer and his business was to sell gasoline and oil to customers and to wash and shift cars as they came in. The defendant was well acquainted with him and knew that he was so employed. He reached the garage with his car about 11:45 P. M. He found there the plaintiff alone and apparently in charge. The garage was practically full. The place where defendant's car usually stood was occupied by a shorter car which should have been upon the right-hand side. On the wash rack was another car. Under these circumstances expecting it to be washed and put in place the defendant left his car in the runway. This was then completely closed. He must have known that it was impossible to shift the car standing in the stall usually occupied by him to the other side of the room or to put his own car upon the wash rack without unblocking this runway. He knew that this could only be done by backing his own car into the hallway or into the street. He knew that if the hallway was occupied any other car that might come to the garage could not enter. Under similar conditions he had seen his own car and others taken temporarily into the street. With this knowledge he went to his home, nearby.

Some time later looking out of one of his windows he saw his car backing into the street. It backed a short distance to the left, or north, then ran forward to the south and stopped by the curb a few feet from the garage

runway still in front of the building and only far enough so that any one wishing to purchase gasoline could stop his car free of the runway and not touch the car of the defendant. At this time the lights of the car were not burning. They had either not been lighted before it left the garage or they were turned out immediately afterward. The car was plainly visible, however, because of electric lights in the street.

·The person who had handled the car then entered the garage. Wilkinson left his house, walked to the car and locked the ignition switch so that it could not be moved. The doors of the garage were open. He watched for some time and then telephoned for a policeman. With the policeman he again approached his car and found Burns in it attempting to start it. A considerable time must have elapsed since the car had been backed into the street. Burns says thirty minutes. In any event the plaintiff was dressed in the clothes which he ordinarily wore at work in the garage and also in the street. He had on no overcoat, although it was a winter night. The doors of the garage were still wide open. ·Questioned, he explained that he had taken the car out so as to make room for his work inside and that he was then about to drive it back and put it in place.

Burns was not intoxicated. His explanation was apparently frank and full. He was, however, taken to the office. This door was locked, but the garage doors, which about this time swung shut, possibly moved by the wind were only caught by a latch.

Under these circumstances we cannot agree with the Appellate Division. It is quite true that if the facts are undisputed and permit of no divergent inferences the question of probable cause is for the court. But is that the case before us? It was late at night. His car was run into the street. The defendant had given Burns no permission to use it. Had nothing else appeared he might well have had probable cause for the arrest and

prosecution. But in view of the other facts which we have recited it is clearly for the jury to decide whether " a discreet and prudent person would have been led to the belief that the accused had committed the crime of which he was charged."

The judgment of the Appellate Division must be reversed and that of the Trial Term affirmed, with costs to the plaintiff in the Appellate Division and in this court.

HISCOCK, Ch. J., CHASE, COLLIN, CARDOZO and POUND, JJ., concur; CRANE, J., not voting.

Judgment reversed, etc.