Isaac Dachs, Respondent, *v.* DeLite Realty Company, a Domestic Corporation, and Another, Appellants.

First Department, July 2, 1924.

Malicious prosecution — probable cause — plaintiff was charged with removing fixtures from house rented by him — plaintiff was held for grand jury after hearing before Magistrate's Court but grand jury failed to indict — holding of plaintiff for hearing is prima facie evidence of probable cause — evidence shows that although plaintiff installed fixtures they did not belong to him — probable cause existed — evidence — prejudical error to reject testimony by defendant that at time information was lodged with magistrate he believed he had probable cause.

In an action for malicious prosecution the existence of probable cause for the arrest of the plaintiff is shown *prima facie*, since it appears that the plaintiff, who was charged by the defendant with having removed and stolen fixtures from a

house which plaintiff rented, was held by the Magistrate's Court after a hearing to await the action of the grand jury, which, however, failed to find an indictment.

The evidence shows that although the plaintiff installed the fixtures when he took possession of the house, they became the property of the defendant, and that the plaintiff had no right to remove them and that there was probable cause for his arrest on the complaint of the defendant.

It was error for the court to reject testimony on the part of the defendant that at the time he lodged the information with the magistrate and asked for a summons for the defendant, he believed that he had probable cause for the institution of the criminal proceeding.

APPEAL by the defendants, DeLite Realty Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 3d day of March, 1923, upon the verdict of a jury for $5,000, and also from an order entered in said clerk's office on the 7th day of March, 1923, denying the defendants' motion for a new trial made upon the minutes.

*Sparks, Fuller & Stricker [Frederick W. Sparks* of counsel; *Henry J. Wall* with him on the brief], for the appellants.

*Goldstein & Phillips [Louis Phillips* of counsel], for the respondent.

MARTIN, J.:

This action was brought to recover damages alleged to have been sustained by reason of the malicious prosecution of the respondent by the appellants.

The complaint alleges that on or about September 3, 1920, the appellants maliciously and without reasonable or probable cause charged the respondent before a city magistrate with the crime of grand larceny, in having feloniously taken, stolen and carried away six glass door knobs, one bathtub, one sink and one family iron washtub, all of the value of $145, from premises 219 Keap street, in the borough of Brooklyn; that a summons was issued charging the respondent with the crime of grand larceny; that thereafter a hearing was had before a city magistrate and plaintiff was held to bail in the sum of $500; that pending bail, the respondent was imprisoned in the jail of the Magistrate's Court; that subsequently the appellants maliciously charged respondent before the grand jury of Kings county with the crime of grand larceny, but that the grand jury terminated the prosecution by refusing to find an indictment.

The appellant DeLite Realty Company is a domestic corporation and the appellant Charles W. Reeve is its treasurer and secretary.

In the early part of August, 1917, the premises 219 Keap street, in the borough of Brooklyn, were owned by L. O. Reeve. They consisted principally of a four-story house, which about that time

was vacant. Respondent opened negotiations with the appellant Reeve for renting same. There is a dispute with reference to these negotiations. Respondent's version is that the rent demanded by the owners was sixty dollars per month; that he closed at said figure, and that a lease together with a letter giving him permission to sublet was delivered to him on August 10, 1917; that he requested appellant Reeve to install the necessary improvements to convert the property into a house suitable for two families, but the appellant refused to do this, saying: "If you want to * * * you can do it yourself, at your own expense, and it will always be your property." Subsequently, about August 30, 1917, he moved into the premises and installed a sink, a boiler, a hot water heater and gas range, two washtubs, and a bathtub.

The appellants present an entirely different story. They say that at the opening of negotiations the rent demanded for the premises was $90 per month and after considerable negotiation it was reduced to $62.50, on condition that the respondent install the necessary improvements for converting the property into a two-family house and on the further condition that these improvements were to remain on the property at the expiration of the lease; that respondent then gave his check for $187.50 being security, to be held for the rent of the last three months of the lease, and obtained a receipt from the appellant Reeve; that on August 10, 1917, the respondent came to the office of the defendant Reeve and complained of the cost of installing the improvements and, after further bargaining, the rent was reduced to $60 per month; that respondent then gave his check for $180 in place of the check for $187.50, which was returned to him; and that the following day the respondent again came to the appellants' office and received the lease together with two letters, one stating the conditions under which the lease was given, and the other granting respondent permission to sublease a portion of the house.

There is no dispute that respondent went into possession about August 30, 1917, and installed a sink, boiler, hot water heater, gas range, two washtubs and a bathtub. Mr. L. O. Reeve died during the term of the lease and title to the property passed to the DeLite Realty Company.

About July, 1920, just before the expiration of the lease, there were negotiations for a renewal, but the parties failed to agree. Appellants say that, when respondent opened negotiations, a rent of $125 per month was demanded, but respondent protested he could not pay such a rental as " he had paid within $300 or $400 or more to put these things in the house; that he would have to go out and abandon them and leave them in the house," and he felt

that, in view of this, the landlord should not demand so much rental.

Respondent's version is that when the appellant Reeve demanded $135 to renew the lease, he told him he would have to move and he also told Reeve, " You know the fixtures belong to me and I will take them out," to which appellant Reeve replied, " If you take those fixtures out, I am going to make you trouble."

There is also some dispute as to the actual date respondent moved from the premises, and the attendant circumstances. The appellant Reeve testified that he visited the premises on August 31, 1920, about four P. M.; that respondent was still in possession; that the improvements installed by the respondent were still in the house as well as six door knobs which were in the property prior to the time respondent took possession; that the next morning, September first, about nine o'clock, when he again went to the house, he found respondent's wife sweeping the areaway in front of the premises; that he noticed the fixtures were gone and also the six door knobs, and he asked Mrs. Dachs what had become of the door knobs and the fixtures that were on the second floor, and that she replied, " Why, papa took them away, they are ours." Appellant Reeve also testified that the removal of the fixtures had caused considerable damage to the property. Appellants offered in support of Mr. Reeve's testimony, two witnesses, John Cardinnelli, a new tenant, and one Haskell, a real estate agent, who testified that they were in the premises on August 31, 1920; that the door knobs and the other articles were in the premises on that day; and that they were also at the house on the following morning, September first, and the fixtures and the door knobs were gone.

The respondent says that he moved from the premises August thirtieth, and admits he removed the bathtub, the boiler, the hot water heater, the sink and the gas range. Mrs. Dachs' testimony is that she met the appellant Reeve at the premises on August thirty-first, and at that time she was sweeping out the basement but that he did not talk to her.

After appellant Reeve discovered the conditions described by him, he consulted his attorney, presented the facts to him, and, acting on his advice, filed the complaint with a city magistrate. A summons was issued and respondent was arraigned before the magistrate, who, after a hearing, held respondent for the grand jury under a bond of $500. He was released almost immediately on the bond being furnished by his wife.

The evidence shows that the fixtures did not belong to the tenant and had become part of and permanently attached to the realty. The tenant apparently had no right to direct a plumber

to detach these fixtures. There is evidence that in so doing he injured the property, a result to be expected from detaching such fixtures.

In the proceeding in the Magistrate's Court when a certain letter was admitted in evidence both the attorney for the plaintiff and the plaintiff had their attention called to the fact that this letter was in evidence and that it was upon this letter that the magistrate was about to hold the plaintiff for the grand jury. This letter seemed to be considered conclusive there, but nevertheless plaintiff did not meet it with his testimony.

Mr. Louis Phillips, who appeared as attorney for the plaintiff herein in the Magistrate's Court, testified in this case as follows: " Q. You say that the reason you did not put your client on the stand, and offer an explanation was because the Magistrate told you that, if you had made a proper objection to the letter going in, that he would have discharged Dachs? A. That is not all that I said, Mr. Sparks. Q. What did you say? A. I said the Magistrate also said to me that no matter what my client testified to, he would hold him any way, so that under those circumstances, there was no use of my asking him to state his side of the transaction, because the Magistrate was going to hold him any way. Q. But because of the fact that you had not made a proper objection? A. I suppose that was one of the reasons."

The plaintiff could have testified in reference to the letter if the complainant's testimony was not true. He, however, failed to take the stand and the magistrate properly held him for the grand jury. The fact that plaintiff was held by the magistrate after a hearing was *prima facie* evidence of probable cause.

In *Schultz* v. *Greenwood Cemetery* (190 N. Y. 276, 280) the court said: " Defendant's counsel requested the court to charge that the holding of the accused by the city magistrate after examination into the facts was *prima facie* evidence of probable cause for the prosecution. The request was refused and an exception taken. This request embodied a correct rule of law and the defendant was entitled to have the jury instructed accordingly. In a case in the Supreme Court of the United States (*Crescent, etc., Co.* v. *Butchers' Union,* 120 U. S. 141) it seems to be held that the decision of the inferior court in favor of the person instituting the prosecution is conclusive proof of probable cause for the prosecution. But the general rule seems to be that the decision is *prima facie* proof of probable cause. (*Burt* v. *Place,* 4 Wend. 593; *Nicholson* v. *Sternberg,* 61 App. Div. 51; 2 Greenleaf on Evidence [14th ed.], sec. 455 and note; Hilliard on Torts, p. 449, sec. 16; *Ganea* v. *S. P. R. R. Co.,* 51 Cal. 140; *Holliday* v. *Holliday,* 123

Cal. 26; *Giusti* v. *Del Papa,* 19 R. I. 338.) The question has recently been examined and elaborately discussed in this court in an opinion by Judge VANN, where it is held that such orders and commitments are *prima facie* proof of probable cause. (*Burt* v. *Smith,* 181 N. Y. 1.) The principle of that case was also applied in *Rawson* v. *Leggett* (184 N. Y. 504); and in *Tyson* v. *Bauland Co.* (186 N. Y. 397). So I think the learned judge was in error when he refused to charge the request."

Upon this trial the plaintiff denied having received the letter in question. The evidence shows that it is quite probable that it accompanied the lease because it was made a part thereof, and the premises were not only taken subject to the lease, but also on the terms stated in the letter. The improvements to be placed in the building that were called to the plaintiff's attention in that letter, and which he was given permission to install, were afterwards installed by him. Under the circumstances we believe probable cause for the prosecution was shown.

There unquestionably is probable cause for prosecuting a man who takes plumbing fixtures from a house by detaching them from the realty, and who mutilates or destroys a portion of a building in order to do so. The burden was upon plaintiff to show want of probable cause for the prosecution.

In *Fagnan* v. *Knox* (66 N. Y. 525, 528) the court said: " The question of what constitutes probable cause does not depend upon whether the offense has been committed in fact, nor whether the accused is guilty or innocent, but upon the prosecutor's belief, based upon reasonable grounds. * * * The prosecutor may act upon appearances, and if the apparent facts are such that a discreet and prudent person would be led to the belief that the accused had committed a crime, he will not be liable in this action, although it may turn out that the accused was innocent. [*Carl* v. *Ayers,* 53 N. Y. 17.] If there is an honest belief of guilt, and there exist reasonable grounds for such belief, the party will be justified. But however suspicious the appearances may be from existing circumstances, if the prosecutor has knowledge of facts which will explain the suspicious appearances and exonerate the accused from a criminal charge, he cannot justify a prosecution by putting forth the *prima facie* circumstances, and excluding those within his knowledge which tend to prove innocence."

In *Schultz* v. *Greenwood Cemetery* (190 N. Y. 276, 278) the court, speaking of probable cause, said: " An action for malicious prosecution against an officer or other person may be defended by proof of reasonable and probable cause for the prosecution and the burden of proving want of probable cause is upon the plaintiff.

The plaintiff must allege and prove, not only the want of probable cause for the prosecution, but also that it was inspired by malice. (*Besson* v. *Southard*, 10 N. Y. 236; *Heyne* v. *Blair*, 62 N. Y. 19; *Thaule* v. *Krekeler*, 81 N. Y. 428; *Anderson* v. *How*, 116 N. Y. 336; *Willard* v. *Holmes, Booth & Haydens*, 142 N. Y. 492.) In either case the action is defended whenever the facts and circumstances stated have been established, though it may turn out that the person arrested or prosecuted was innocent. It is not necessary for the defendant in this class of actions to establish that the person arrested was actually guilty. As this court has stated, innocent parties may sometimes be subjected to inconvenience and mortification; but any more lax rule would be greatly dangerous to the peace of the community and make the escape of criminals frequent and easy. [*Burns* v. *Erben*, 40 N. Y. 463, 470.]"

Respondent would have us reject the highly probable testimony in the case and believe that the fixtures attached to the realty remained his regardless of whether they could be removed without damaging the building. The damage that was done in taking out these fixtures would ordinarily have warranted a prosecution for malicious mischief. The damage is described by Charles W. Reeve as follows: " Q. Mr. Dachs has testified that in removing the bath-tub and the other articles, that the plaster was not knocked off the wall, and there was no paint scraped off. Will you describe to the Court and jury what the condition was in that respect? A. On the second floor, back room, where this sink had been installed, and the wash tray alongside, there were holes in the plaster, probably that big around (Indicating about four inches in diameter). The plaster itself was all knocked out, holes in it, big holes. The paper was all torn and ripped out. Holes had been bored in the floor to bring the pipes up. In the basement, where the bath-tub had been put, there was not a great deal of damage there to the walls themselves, excepting the holes in the floor, which had been bored in there to bring the pipes up. The old water pipes had been hammered together, to close them up. Of course, they were not tight, but the water had been turned off in the cellar, so that then there was no water on the second floor at all. In shutting off the water going to the new sink, it shut off the water going to the bath-room and the two wash basins that were between."

In addition to the fixtures described herein the respondent apparently took away some door knobs, which were the property of the defendants.

On the evidence before him the magistrate was bound to hold the plaintiff, and if the same evidence was presented to the grand jury he should have been indicted.

In addition to the fact that plaintiff failed to establish want of probable cause there is another ground upon which the judgment should be reversed.

The court erred in excluding evidence that the appellant Reeve, at the time he lodged the information before the magistrate, believed that he had probable cause for the prosecution. On the direct examination of the appellant Reeve, the following was asked and excluded by the court: " Q. At the time that you lodged the information or request for a summons for the defendant before the magistrate did you believe that you had probable cause for the institution of the proceeding. Mr. Wing: Objected to. The Court: Objection sustained. Mr. Sparks: I think it is only fair to your Honor, that I should say that that question has been taken from this case in 190 N. Y. The Court: I think you should show the facts. Mr. Sparks: I have taken the question right from the case itself. The Court: I sustain the objection. The question is, did the facts, which he had knowledge of at that time, the information placed before him, give him grounds? It is not so much that he believed. Did it give him grounds as showing probable cause? "

In *Conner* v. *Wetmore* (110 App. Div. 440), Presiding Justice McLennan, writing the opinion, said: " When the defendant was being examined as a witness in his own behalf, and after he had detailed his acts and the circumstances in connection with the procurement of the search warrant, he was asked: ' Q. Mr. Wetmore, at the time you lodged the information for this search warrant before the police magistrate of the city of Rochester, did you believe that you had probable cause for the institution and prosecution of the proceeding? ' This question was objected to and the objection sustained and exception duly taken. He was also asked: ' Q. Upon what did you rely at the time you instituted this search warrant proceeding? ' Upon plaintiff's objection the defendant was also precluded from answering that question, to which exception was taken. We think both questions were competent and material. If the first question had been answered in the affirmative, the defendant would only have said in substance that he believed the charges made by him were true; that he believed the information which he received connecting the plaintiff with the stolen property was true, trustworthy and reliable.

" ' Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds. One may act upon what appears to be true, even if it turns out to be false,

provided he believes it to be true and the appearances are sufficient to justify the belief as reasonable.' (*Burt* v. *Smith,* 181 N. Y. 1.)

" ' He (the defendant) was at liberty to prove that he acted in good faith and with an honest intention and upon reasonable grounds of suspicion.' (*Goodman* v. *Stroheim,* 36 N. Y. Super. Ct. 216.)

" In *McKown* v. *Hunter* (30 N. Y. 625) it was held to be reversible error to refuse to permit the defendant to state that when he made the charge he believed the plaintiff was guilty of the offense imputed to him.

" In *Bennett* v. *Smith* (23 Hun, 50), which was an action of libel, it was held error not to permit the defendant to state why he wrote the article.

" We think it was also error not to have permitted the defendant to state upon what he relied at the time he instituted the search warrant proceeding. That question went directly to the intent and motive of the defendant, and it was competent for him to testify as to the intent or motive that characterized his action. (*McKown* v. *Hunter, supra.*)

" It is alleged by respondent's counsel that the only purpose of the questions referred to was to disprove malice on the part of the defendant, and that as the defendant had already testified that he was not actuated by malice in instituting the proceeding, the exclusion of the evidence was in any event not harmful. It was entirely immaterial whether or not the defendant was actuated by malice, provided he had probable cause for instituting the proceeding. As was said in *Besson* v. *Southard* (10 N. Y. 236, 239) — and the cases have been uniform from that time until this in holding — ' if there was probable cause for such suit, although it was maliciously commenced, the action could not be sustained. Want of probable cause and malice must concur. The question of malice in this action is for the jury. The want of probable cause is independent of malicious motive, and cannot be inferred, as a necessary consequence, from any degree of malice which may be shown.' We think the defendant had a right to state that he believed he had probable cause for believing that the stolen property in question was in plaintiff's possession; and that he also had a right to state to the jury upon what he relied at the time he instituted the search warrant proceeding."

The judgment and order should be reversed and a new trial ordered, with costs to the appellants to abide the event.

CLARKE, P. J., DOWLING, SMITH and McAVOY, JJ., concur.

Judgment and order reversed and new trial ordered, with costs to appellants to abide the event.