HAROLD HOPKINSON, Respondent, *v.* LEHIGH VALLEY RAILROAD COMPANY, Appellant.

(Argued October 22, 1928; decided November 20, 1928.)

*Clifton P. Williamson* and *Herbert S. Ogden* for appellant. The undisputed facts require a finding of probable cause as matter of law. (*Halsey* v. *N. Y. Society,* 234 N. Y. 1; *Burt* v. *Smith,* 181 N. Y. 1; *Besson* v. *Southard,* 10 N. Y. 236; *McCarthy* v. *Barrett,* 144 App. Div. 727; Penal Law, § 1290; *People* v. *Sherman,* 133 N. Y. 349; *Rawson* v. *Leggett,* 184 N. Y. 504; *Zucker* v. *Zarambowitz,* 181 App. Div. 289; *Carl* v. *Ayers,* 53 N. Y. 14; *Macauley* v. *Starr, Inc.,* 194 App. Div. 643; 233 N. Y. 601.)

*Isador Goetz* for respondent.   The question of probable cause was a question for the jury.   (*Grew* v. *Newton Home Tel. Co.*, 192 App. Div. 863; 233 N. Y. 560; *Halsey* v. *N. Y. Society*, 234 N. Y. 1; *Hyman* v. *N. Y. Central R. R. Co.*, 240 N. Y. 137; *Rolnick* v. *Borden*, 214 App. Div. 259; *Burt* v. *Smith*, 181 N. Y. 1.)

CRANE, J.   Plaintiff for sixteen years had been in the employ of the defendant and at the times here in question was the agent in charge of the freight station, pier 44, East river, where the principal commodity handled was flour.   He had been in charge of that pier from the time it was opened in 1917, until his discharge or resignation on August 5, 1922.   Rumors of irregularities in the delivery of flour coming to the attention of the plaintiff's superior, the matter was investigated, and it was found that there was an unusual shortage in bags of flour unaccounted for.

La Rosa & Di Fiore were consignees of a car of flour containing 350 sacks of " Red Ball " brand, which arrived at pier 44, East river.   They received notice that these sacks of flour were on the pier ready for delivery.   Later 161 sacks of this flour were missing and delivery refused. Both members of the firm saw the agent, Mr. Hopkinson, who stated that someone else must have overdrawn on another car, and that he would make up the loss to them.   Thereupon, at a later day, 161 bags of other flour were delivered to Di Fiore.   The flour delivered belonged to another customer, named Morris Breiner. Hopkinson claimed and stated that Breiner had sold or authorized delivery of this flour to La Rosa & Di Fiore. This Breiner denied and made claim upon the railroad company for its delivery to him.   In a letter of August 17, 1922, he wrote to the freight claim agent, Mr. H. E. Snyder, in reference to the 161 bags of flour, as follows:

" I want to go on record with you that one day we went to the pier and the flour was there, and the next

day it was gone, so there is no reason in the world why the L-V-R-R, should not get the 'guilty party' immediately."

He also made an affidavit for the company to the same effect, stating that he had at no time either personally or by representative authorized Harold Hopkinson to deliver 161 bags of his flour to the La Rosa & Di Fiore Company, or any one else.

Another shortage of 35 bags, belonging to a man named Sellinger, was also discovered. Hopkinson also made false statements about this delivery. Other claimants pressed for missing flour, and their shortages could not be accounted for. Harry Lannon, who was a checker on the dock, reported that after some deliveries had been made on the verbal instructions of Hopkinson, although written delivery orders were required, he, Hopkinson, had given money to him, saying that he had sold the flour. Upon an examination of the cash book and the cash at the pier, there was found a check to the order of the Lehigh Valley Railroad Company for $275, made by Sam Held, a friend of the agent. Hopkinson explained this by saying that he had drawn $265.88 for legitimate expenses, but that he had put the money back in the form of this check, rather than have any trouble about it. The balance, which was the difference between the amount of the check and the amount drawn by Hopkinson, $9.12, was found in currency in an envelope in the back of the cash drawer. It also appeared that some of the receipts for the delivery of flour were forged.

I shall not attempt to detail all the evidence given in this case bearing upon the conditions at the pier regarding the delivery of flour, the methods of business or all the facts revealed upon the investigation conducted by the railroad company beginning in June and lasting until the 1st of September, 1922, for the reason that the above facts furnish the groundwork for the law of malicious prosecution applicable to this case.

The railroad company presented all the facts which it had thus gathered to the District Attorney of New York county. Mr. John F. O'Neil was the Assistant District Attorney in the office of Mr. Banton, having charge of this case. After looking over the papers submitted, he sent for all the witnesses and examined them himself before presenting the matter to the grand jury. He did not rely upon the affidavits or the information which the company had collected on its investigation. He desired to see the witnesses personally, which he did. He testifies in this case as follows: "After satisfying myself that the evidence produced, both personal and documentary, justified me in presenting the evidence to the Grand Jury, I so presented it and the Grand Jury returned an indictment against Hopkinson, charging him with stealing a certain number of bags of flour belonging to the. Lehigh Valley." The witnesses who were called and examined before the grand jury included Jack Di Fiore, Morris Breiner, Harry Lannon and others. After hearing these witnesses, the grand jury found an indictment, charging Hopkinson with grand larceny, in having stolen the 161 bags of flour, above referred to. The case coming on for trial in the General Sessions, the indictment was dismissed. Breiner, it is stated, went back on his testimony before the grand jury; but whatever the cause, it is now immaterial.

The plaintiff has brought this action for malicious prosecution and has recovered a judgment which has been affirmed by the Appellate Division, the court dividing three to two. The appeal requires us to say what effect the indictment had upon the plaintiff's right to recover. This point does not seem to have been heretofore clearly passed upon by this court, although raised in *Rawson* v. *Leggett* (184 N. Y. 504).

Section 258 of the Code of Criminal Procedure says that a grand jury ought to find an indictment when all the evidence before them is such as in their judgment

would if unexplained warrant a conviction by the trial jury. An indictment, therefore, when brought into a civil case, necessarily implies, until the contrary appears, that there was such evidence. A similar provision relates to the duty of the committing magistrate. (Sec. 208.) If from the examination before him, there is sufficient cause to believe the defendant guilty of the crime charged, he must so certify and hold the prisoner. The holding of the accused by a magistrate after an examination into the facts is *prima facie* evidence of probable cause for the prosecution. (*Schultz* v. *Greenwood Cemetery*, 190 N. Y. 276, p. 280; *Burt* v. *Smith*, 181 N. Y. 1, p. 7; *Pearsall* v. *Macbeth*, 180 App. Div. 851; *Dachs* v. *DeLite Realty Co.*, 210 App. Div. 230, p. 234.) An indictment by the grand jury is also *prima facie* evidence of probable cause. (*Casey* v. *Dorr*, 94 Ark. 433, reviewed in note Amer. & Eng. Anno. Cases, vol. 21, pp. 1046, 1047, 1048, and *Schott* v. *Indiana National Life Insurance Co.*, 160 Ky. 533.)

The plaintiff in his malicious prosecution case must, therefore, meet this *prima facie* evidence of probable cause by showing that the defendant did not make a full and complete statement of the facts either to the magistrate or to the District Attorney; has misrepresented or falsified the evidence, or else has kept back information or facts which might have affected the result. When the Lehigh Valley Railroad Company presented all its information to the public prosecutor, who himself conducted an independent investigation, and presented the matter to the grand jury, which found an indictment against the plaintiff, to succeed in an action for malicious prosecution, the plaintiff must show that the defendant or its agents did not make a full and complete statement of the facts to the prosecuting officer, or kept back information which in all fairness should have been submitted to him.

If a person disclose fairly and truthfully to an officer whose duty it is to prosecute crime, all matters within his

knowledge, which as a man of ordinary intelligence he is bound to suppose would have a material bearing upon the question of the innocence or guilt of the persons suspected, and leaves it to the prosecutor to act entirely upon his own judgment and responsibility as a public officer, and does no more, he cannot be held answerable in an action for malicious prosecution, even if the officer comes to a wrong conclusion and prosecutes when he ought not to do so. Such a person does no more than his duty. (*Burnham* v. *Collateral Loan Co.*, 179 Mass. 268.)

The District Attorney of New York county in this case, after examining the facts, acted upon his own judgment and indicted the plaintiff.

There is in this case no evidence whatever to prove that the defendant or its agents did not make a full and complete statement to the District Attorney of all the facts and information within their possession. There is no claim that the agents of the defendant falsified. In fact, the testimony before the grand jury was mainly given by flour merchants and persons not in the employ of the defendant.

The effect of the action by the District Attorney and the indictment by the grand jury seem to have been pushed aside at the trial and little or no point made of it in the charge of the trial court. The exception, however, taken to the motion to dismiss, made at the end of the case, raises the question.

In *Burns* v. *Wilkinson* (228 N. Y. 113) the defendant was himself the witness. On the accuracy of his own statements and testimony regarding the occurrence, the public prosecutor and grand jury were called upon to act. The fairness and the completeness of his own statements were the subject of attack. See the difference as expressed in *Schott* v. *Indiana Nat. Life Ins. Co.* (160 Ky. 533). The case, therefore, did not call for this statement of the law.

For this failure in the evidence to show the want of good faith, or a full and fair statement of the facts to the District Attorney, the judgment of the Appellate Division and that of the Trial Term should be reversed, and the complaint dismissed, with costs in all courts.

CARDOZO, Ch. J.; POUND, ANDREWS, LEHMAN and KELLOGG, JJ., concur; O'BRIEN, J., not sitting.

Judgment reversed, etc.