FREDERIC L. THOMPSON, Respondent, *v.* THE FIFTH AVENUE BANK OF NEW YORK, as Executor, etc., of HORACE J. BROOKES, Deceased, and CAROLINE G. THOMPSON, Appellants.

First Department, May 1, 1936.

*Frederick N. Van Zandt* of counsel [*H. A. Cushing,* attorney], for the appellant The Fifth Avenue Bank of New York, as executor, etc.

*Frederick N. Van Zandt* of counsel [*Herbert B. Lee* with him on the brief; *Lyon, Lee & Lyon,* attorneys], for the appellant Caroline G. Thompson.

*George F. Thompson* [*James P. Ronaghan, John Kirkland Clark, Edward T. Welch* and *Moreau Yeomans* with him on the brief], for the respondent.

GLENNON, J. This is an appeal by the defendants from a judgment for $75,000 damages entered upon a verdict of a jury in an action for malicious prosecution, after a trial which covered a period of sixteen days. Not only have we had occasion to consider the testimony of the various witnesses who were called in the present action, but, in addition thereto, we felt in duty bound to read the record of the original case in the State of Massachusetts wherein the plaintiff was charged in one indictment with assault with intent to murder, and in another indictment with an attempt to commit murder by giving poison or poisons.

The plaintiff and the defendant Caroline G. Thompson were married June 28, 1892, in New Bedford, Mass. There was no issue of the marriage except one child who died at birth. In or about the year 1903 they moved to New York and took up a residence on Crotona avenue in the Bronx. The plaintiff attempted with little success to earn a livelihood, chiefly as an artist. In 1905 defendant Caroline G. Thompson contracted rheumatic fever in her knee and also broke her ankle. The combination of her afflictions resulted in a permanent injury which practically has deprived her of the use of her leg. Later the parties moved to Manhattan and it became necessary for Mrs. Thompson, in order to meet the ordinary household expenses, to obtain a position where her husband was then employed.

About the year 1908 the plaintiff and his wife became acquainted with the codefendant, Horace J. Brookes, who died at the age of ninety, shortly after the trial of this action. In 1910 Brookes invited the Thompsons to visit him at his summer home in Burlington, Vt. According to Mrs. Thompson, from that time on, and particularly during the summer and fall seasons, she acted more or less as a housekeeper, secretary and nurse for Brookes whenever the occasion warranted. Brookes in those seasons of the year, except when he was away on trips, resided with the plaintiff and his wife and furnished the money for household expenses. The plaintiff in 1911 leased a plot of land at Menemsha, Martha's Vineyard, Mass., whereon he erected a small house in which he provided a room for Brookes. During the winter months for a great many years, except on occasions when the Thompsons visited the south and other places at the expense of Brookes, plaintiff and his wife occupied rooms at the Hotel Senton in New York where Brookes was always welcome. In 1917 Brookes advanced money for the purchase of land at Chilmark, Martha's Vineyard, Mass. The house, which was originally constructed by plaintiff, was moved over to Chilmark and occupied by the parties until the fall of 1925. In so far as Brookes was concerned, the relationship of the parties continued along pleasant lines during all that period. It is admitted by plaintiff that Brookes always conducted himself as a refined, cultured gentleman. Certain difficulties arose apparently based upon the desire of the plaintiff to have a man and his wife who at that time lived in Montreal visit the home at Chilmark. Mrs. Thompson, on learning that one of the proposed guests was addicted to the use of morphine, refused to permit it. Plaintiff became exceedingly resentful. In the fall of 1925 plaintiff and his wife took up a residence at the Hotel Broztell in Manhattan.

In or about November, 1925, plaintiff went to Florida, where he remained until 1927. He asserts that while there he sent his wife one post card and two letters. The reason he assigned for taking the trip to Florida alone was that he had received a certain so-called blackhand letter in which it was stated that if plaintiff did not leave her she would be put to death. The falsity of that statement, however, is indicated by a letter which he wrote to one Rachel Marshall, a cook formerly employed in the house at Chilmark, wherein he said in effect that his partner had written him that he had made enormous profits in Miami, and requested Mrs. Marshall " please don't mention this to Mrs. Thompson."

Mrs. Thompson instituted an action for divorce in Massachusetts on December 22, 1925, based upon cruel and inhuman treatment and desertion. At the trial of the action, which took place September 9, 1926, the plaintiff failed to appear. In due course a final decree was entered in her favor. With the exception of a telegram which plaintiff sent to his wife about six days after he had left for the south, she asserts that she did not hear from him until 1928, when she received a birthday card.

Plaintiff, on August 26, 1929, together with one Lillian Shalvey, visited the house at Chilmark for the purpose, according to plaintiff, of obtaining certain of his personal property. At that time Mrs. Thompson was occupying the house together with Brookes, who was then eighty-five years of age, Esther Mellor and Mary L. Vorce, sisters of Mrs. Thompson, and two children. The plaintiff's friend, Lillian Shalvey, obtained admission to the house through subterfuge. Thompson then appeared. He claims that Brookes stated in the course of an argument which ensued that if Thompson did not drop a certain lawsuit which he had instituted against Brookes, the latter would put him behind bars for the rest of his life. Mrs. Mellor left the house for the purpose of communicating by telephone with the police. Mrs. Thompson asserts that her former husband made certain threats, but denied, when called as a witness in the Massachusetts case, that Brookes had made any threats against the plaintiff. Corroboration of Mrs. Thompson's testimony as to the attitude of Brookes can be found in a statement of the plaintiff which was addressed to the prosecuting attorney at Chilmark, wherein plaintiff, in referring to the episode of 1929, said: " Col. Brookes was quite congenial to me and wanted to discuss the matter but he was immediately silenced by the insistence of Mrs. Thompson that I leave the place." Later in the day Mrs. Thompson procured a warrant at Edgartown, Mass., based upon the alleged threats of the plaintiff to do her bodily harm. The warrant was not executed, since the plaintiff left the jurisdiction and returned to New York.

Later, the Commonwealth attorney submitted evidence to the grand jury of Dukes county, Mass., with the result that on September 24, 1929, three indictments were presented against the plaintiff, one for an attempt to commit murder on Caroline G. Thompson by giving her poison, a second for assault on Caroline G. Thompson with an intent to murder her, and the third for the possession of obscene and impure books, prints and pictures. The number or names of all of the witnesses who were called by the Commonwealth attorney to give evidence before the grand jury does not appear. It is safe to say, however, that Mrs. Thompson was called as a witness. There is a grave doubt as to whether or not Brookes was heard by the grand jury. The plaintiff asserts that he was, based upon the fact that Mrs. Mellor stated in substance that she thought she heard Brookes say that he had been called. The fact remains, however, that Brookes was not a witness at the trial which took place in Edgartown.

The charges of an attempt to commit the crime of murder by poisoning and assault were limited to a period between January 1, 1925, and February, 1926, pursuant to an agreement between the defendant and the Commonwealth attorney. It should be noted that neither charge was based upon the happenings of August, 1929. The trial, based upon the first two indictments, was commenced on May 1, 1930, in the Criminal Division of the Superior Court at Edgartown, Mass. On May second the testimony was completed. On the following day Thompson, through his attorney, made a motion for a directed verdict in each case. The motion was denied, thereby indicating the court's belief, upon the proofs submitted, that the Commonwealth had proven facts sufficient to sustain the indictment. After the case was submitted in a clear and concise charge, to which no exceptions were saved, a verdict of not guilty was rendered upon each indictment.

It might be well to note in passing, for the purpose of throwing light upon the law of the State of Massachusetts, a portion of the charge delivered by the court at Edgartown: " We are not here to decide any domestic controversies that this is the case of the Commonwealth against one Thompson, and whatever may be said about the acts of Mrs. Thompson has only the bearing of impeaching her testimony, because she is not a party to this case, and even though she lay buried in her grave, The Commonwealth of Massachusetts would have the right to proceed against the defendant in this case, if there was satisfactory evidence of wrongdoing and violation of the law, and, furthermore, Mr. Foreman and Gentlemen, remember that the elected public prosecutor has charge of this case. Mrs. Thompson has no power or direction over him, or his department.

She is the witness, brought here by him, and she is here because she has to be here. No lapse of time condones, or pardons, a viola- tion of the law. If she had been murdered, there is no statute of limitation that will protect the murderer. He could be tried at any time during his lifetime and delays, by whomsoever arranged, or perpetrated, is nothing in his defense."

We do not deem it necessary to recite in further detail the evidence adduced upon the trial of this case, which is predicated upon the theory of malicious prosecution, since we have reached the con- clusion that the complaint should have been dismissed at the close of plaintiff's case, for the failure to prove facts which are necessary in this type of action.

It was incumbent upon the plaintiff in order to make out a *prima facie* case to establish: (1) That the proceeding before the grand jury in Dukes county, Mass., was instituted without probable cause; (2) that it was instituted by the defendants; (3) that it was begun in malice, and (4) that the accused was discharged or acquitted. In so far as Brookes was concerned, there was no credible evidence to establish that he was a witness before the grand jury. He did not testify or appear at the trial in Edgartown. The so-called threat to place the plaintiff behind prison bars, even if one were gullible enough to believe plaintiff's testimony on that point, falls far short of establishing a conspiracy to bring about the indictment of plaintiff for offenses which were alleged to have occurred some four years prior to that date. There is nothing to show that Brookes entered into a conspiracy with any one to cause false testimony to be given to the grand jury.

It is not disputed that the defendant Caroline G. Thompson communicated with the Commonwealth attorney of Dukes county. There is nothing to indicate that she did not make a full and com- plete disclosure to him of the facts out of which the prosecution grew. The Commonwealth attorney, as far as we know, " after examining the facts, acted upon his own judgment and indicted the plaintiff." (*Hopkinson* v. *Lehigh Valley R. R. Co.*, 249 N. Y. 296, 301.) As was said by Judge CRANE in that case (p. 300): " The plaintiff in his malicious prosecution case must, therefore, meet this *prima facie* evidence of probable cause by showing that the defend- ant did not make a full and complete statement of the facts either to the magistrate or to the District Attorney; has misrepresented or falsified the evidence, or else has kept back information or facts which might have affected the result." Mrs. Thompson, as we have seen from the charge of the learned trial court of Massachu- setts, had no power or direction over the prosecutor or his depart- ment — " She is the witness, brought here by him, and she is here because she has to be here."

It might not be amiss to quote from the opinion of Judge VANN in *Burt* 'v. *Smith* (181 N. Y. 1, 5): " The want of probable cause does not mean the want of any cause, but the want of any reasonable cause, such as would persuade a man of ordinary care and prudence to believe in the truth of the charge. Probable cause does not necessarily depend upon the actual guilt of the person prosecuted, but may rest upon the prosecutor's belief in his guilt when based on reasonable grounds. * * * If probable cause exists, it is an absolute protection against an action for malicious prosecution, even when express malice is proved. Thus an innocent person may be prosecuted unjustly and subjected to expense and disgrace with no right to call the prosecutor to account, provided he acted upon an honest and reasonable belief in commencing the proceeding complained of. Peace and good order exact this hardship from the individual for the benefit of the people at large, so that citizens may not be prevented by the fear of consequences from attempting to assert their own rights or to vindicate the cause of public justice by an appeal to the courts."

We do not believe it necessary to discuss or consider other assignments of error which appear in the defendants' brief, since we have reached the conclusion that the plaintiff has failed to prove the elements necessary to sustain a cause of action for malicious prosecution.

The judgment should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., UNTERMYER, DORE and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs.