[981 NE2d 248, 957 NYS2d 652]

MICHAEL GRUCCI, Appellant, v CHRISTINE GRUCCI, Respondent.

Argued October 16, 2012; decided November 20, 2012

## APPEARANCES OF COUNSEL

*Arthur V. Graseck, Jr.*, Oakdale, for appellant.

*Sinnreich, Kosakoff & Messina LLP*, Central Islip (*Timothy Hill* and *Vincent J. Messina, Jr.*, of counsel), for respondent.

## OPINION OF THE COURT

MEMORANDUM.

The order of the Appellate Division should be affirmed, with costs.

Plaintiff Michael Grucci (Michael) and defendant Christine Grucci (Christine) were married in 1988 and had two children. In 1998, Christine sued Michael for divorce. A few months later, Michael was charged with harassing Christine, and the District Court issued an order of protection directing him to stay away from her. In January 2000, Michael was accused of violating the order. The matter was presented to a grand jury, which returned an indictment charging Michael with two counts of first-degree criminal contempt for placing Christine in fear of death or injury by telephone, and harassing her by repeated telephone calls with no purpose of legitimate communication (Penal Law § 215.51 [b] [iii], [iv], respectively). After a bench trial in August 2001, County Court acquitted Michael. The court concluded that Christine's testimony was not credible because of "discrepanc[ies]" in the way she described Michael's alleged threat to the police, the grand jury and at trial. In March 2002, Michael brought this civil action against Christine to recover damages for malicious prosecution.

At trial in December 2008, Michael sought, through the testimony of his brother, Anthony Grucci (Anthony), to play for the jury an audiotape of a telephone conversation in which Christine purportedly made clear to Anthony, at some point after she went to the police, that she was not afraid of Michael. Christine's attorney successfully objected to admission of the audiotape, and to Anthony's testimony about what Christine said during the telephone conversation. After the close of evidence, the judge charged the jury as to the elements required to

establish malicious prosecution, which are that the defendant commenced or continued a criminal proceeding against the plaintiff; that the prosecution terminated in plaintiff's favor; the absence of probable cause; and actual malice (*Smith-Hunter v Harvey*, 95 NY2d 191, 195 [2000]). The court instructed the jurors that "[t]he first question for you to decide is whether [Christine] initiated the criminal prosecution" and "[i]f you find [that Christine was] not responsible for [initiating] the prosecution, *you will find for [her] and you will proceed no further*" (emphasis added); and additionally, if Christine "directed the District Attorney to prosecute or gave the District Attorney information that [she] knew to be false, [she was] responsible for prosecution."* The jury concluded that Christine did not initiate the prosecution, and, as instructed, did not consider the other elements of malicious prosecution. Accordingly, the trial judge entered judgment dismissing the complaint.

Upon Michael's appeal, the Appellate Division affirmed (81 AD3d 776 [2d Dept 2011]). The Court determined that "because the jury found that [Christine] did not initiate the underlying criminal proceeding . . . and the excluded evidence was not relevant to that issue, but only to the issue of [her] malice, [Michael] was not prejudiced by any error the trial court may have committed" in making the complained-of rulings (*id.* at 777). We subsequently granted Michael permission to appeal (17 NY3d 704 [2011]), and now affirm.

Michael claims that the trial judge made critical evidentiary errors warranting reversal and a new trial; namely, refusing to permit Anthony to authenticate the audiotape of the telephone conversation; excluding from evidence, as inadmissible hearsay, statements that Christine made to Anthony during the telephone conversation, which were supposedly offered only to show her state of mind; denying Michael's application to have the transcript of the grand jury testimony placed into evidence; and

---

* We have never elaborated on how a plaintiff in a malicious prosecution case demonstrates that the defendant commenced or continued the underlying criminal proceeding. The dissent points to *Hopkinson v Lehigh Val. R.R. Co.* (249 NY 296 [1928]) for an explanation of the "commencement" element of a malicious prosecution claim (*see* dissenting op at 901-903). In *Hopkinson*, however, we discussed a plaintiff's burden with respect to establishing the absence of probable cause—a separate element of malicious prosecution which is not at issue in this case—and did not mention commencement. Although the dissent argues that the elements of malicious prosecution cannot be easily disentangled (*id.* at 902-903), the trial judge instructed the jury to consider each element separately. For purposes of this appeal, we presume that the judge's uncontested instructions correctly stated the law.

preventing testimony allegedly showing that Christine lied to obtain the order of protection. First, while a party to a taped conversation can identify the speakers, "identity and authenticity are separate facets of the required foundation, both of which must be established" (*People v Ely*, 68 NY2d 520, 528 [1986]). Here, Michael's attorney sought to play the audiotape during Anthony's testimony "as part of [his] presentation of [the telephone] conversation" with Christine that Anthony was recounting. Christine's attorney objected to the audiotape's admission on the grounds it was unreliable, "pieced together from a number of things" and "unintelligible"; that no chain of custody had been established; and generally that "no foundation [had been] laid for it at [that] point." In response, Michael's attorney offered only to have Anthony identify the voices on the tape and state "whether or not the tape recording [was] fair and accurate." When the judge asked if the tape had been authenticated, Michael's attorney responded, "Not yet; this witness will authenticate." The judge then sustained the objection, and Michael's attorney stated that he had no further questions for Anthony.

■ "The predicate for admission of tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered" (*id.* at 522). Here, there was no attempt to offer proof about who recorded the conversation, how it was recorded (e.g., the equipment used) or the chain of custody during the nearly nine years that elapsed between early 2000, when the conversation allegedly took place, and the trial in late 2008. Given the facts and circumstances of this case, the judge did not abuse his discretion by requiring more than Anthony's representation that the tape was "fair and accurate" to establish a sufficient "predicate" before playing the tape for the jury.

■ With respect to Michael's protests that the trial judge "repeatedly" sustained improper hearsay objections during Anthony's testimony, he cites only one example: Anthony was asked, essentially, what Christine said on the audiotape. Although Michael argues that Christine's alleged statements were being offered to prove her state of mind (i.e., malice) rather than for their truth, he wanted Anthony to testify that Christine told him she was not afraid of Michael and that she expressed an alternative motive for going to the police in order to show that Christine lied to the authorities. For this tactic to work, Michael would have to ask the jury to believe that Christine's

alleged statements to Anthony were, in fact, true. While Christine's statements were admissible as admissions of a party opponent, Michael never made this argument to the judge. Additionally, we cannot say that omission of this testimony was so crucial with respect to the issue of whether Christine initiated the prosecution as to require a new trial.

■ Next, in cases in which the grand jury has returned an indictment, there is a presumption of probable cause, and the plaintiff can therefore only succeed on a malicious prosecution claim if he can prove that the indictment was procured by fraud, perjury, suppression of evidence, or other bad-faith conduct (*Colon v City of New York*, 60 NY2d 78, 82-83 [1983]). While Michael argues that review of the grand jury and criminal trial transcripts by the jury would have strengthened his argument that Christine lied to the grand jury, the trial judge permitted Michael's attorney to freely use Christine's prior testimony to impeach her on cross-examination, and allowed him to quote from it during summation. The judge similarly acted within his discretion when he excluded testimony allegedly proving that Christine fabricated the incident that led to the order of protection. Notably, Michael did not dispute these facts when the order was issued.

■ Michael called the assistant district attorney (ADA) responsible for prosecuting the contempt charges, who testified that a standing policy removed any discretion as to whether to make an arrest when the police determined, after investigation, that an incident of domestic violence had occurred; that the ADA, after consultation with his supervisor, made the decision to present a case to the grand jury and, after indictment, proceed to trial; that "it was never up to a complainant or victim . . . whether or not to go forward" because "the ultimate decision on whether to prosecute a case or not falls on the District Attorney['s] office"; and that he remembered that Christine was "just a nice believable lady who presented well, with kids, had marital problems, and of the thousands of cases that [he] prosecuted, that's all [he could] remember [from] 8 years ago." In short, there was sufficient evidence to support the jury's verdict that Christine did not initiate the contempt proceeding.

PIGOTT, J. (dissenting). The trial court's rulings concerning the evidence of what defendant told plaintiff's brother amounted to reversible error. Moreover, the error was far from harmless, because the evidence that plaintiff sought to introduce was directly relevant to the question whether defendant was

responsible for commencing the underlying criminal proceeding against him. The trial court prevented plaintiff from presenting the most powerful evidence in his case. For that reason, I dissent.

## I.

A difficult and contentious matrimonial situation devolved into a criminal indictment, resulting in an acquittal that bred a malicious prosecution claim. The evidence shows that plaintiff and defendant, his ex-wife, engaged in an angry telephone conversation, concerning plaintiff's desire to take their children on a vacation during school term. Defendant then accused plaintiff of violating an order of protection issued against him the previous year. She contacted the police, and filed a sworn statement claiming that plaintiff had threatened to "put a hit out on [her]." Plaintiff was then charged with two counts of first-degree criminal contempt (Penal Law § 215.51 [b] [iii], [iv])—for placing defendant in reasonable fear of injury or death by electronic means, and for repeatedly making telephone calls with intent to harass, annoy, threaten or alarm, and no purpose of legitimate communication. Plaintiff was acquitted, following a bench trial, by a court that found defendant's testimony incredible.

Plaintiff then sued his former wife for malicious prosecution, claiming that she lied to the police, causing him to be prosecuted on baseless charges. The matter proceeded to a jury trial.

To show that defendant's statement to the police that he had threatened to "put a hit out on [her]" was false, plaintiff offered an audiotape of a conversation between his brother and the defendant that occurred after plaintiff had been arrested. Plaintiff offered to prove that, during the conversation, defendant said, essentially, that she had contacted the police out of frustration, because there was no other way to force plaintiff to get psychiatric treatment, not because she was in fear of injury or death. He also offered to prove that, during the conversation, defendant told plaintiff's brother a "fabricated" story "about some prostitute being killed in Maine," which defendant invented to harm plaintiff's reputation.

The tape was offered on the following basis. "We would ask this witness [i.e., plaintiff's brother] if he recognized the voices and whether his prior relationship with [defendant] enabled him to identify her voice and whether or not the tape recording is fair and accurate." The trial court sustained defendant's

objections to admission of the tape and to testimony from plaintiff's brother regarding what defendant had said to him.

This, in my view, was clear error. An audiotape may be authenticated precisely the way that plaintiff's counsel suggested—"by the testimony of a party to the conversation that the tape is unaltered and completely and accurately reproduces the conversation" (Prince, Richardson on Evidence § 4-213 at 150 [Farrell 11th ed], citing *People v Ely*, 68 NY2d 520, 527-528 [1986]). As stated in a well-established treatise on the law of evidence,

> "if a percipient witness overheard the voices as they were recorded, this witness may provide the required authentication foundation by testifying that the sound recording is an accurate record of what the witness did hear. In such a case, no chain of custody is required, since the purpose of proving the chain is to show that the recording is in the same condition as when first recorded" (2 Broun, McCormick on Evidence § 216 [6th ed] [footnotes omitted]; *see also* Martin, Capra and Rossi, New York Evidence Handbook § 9.8.1 at 907 [2d ed]).

The majority relies on our decision in *People v Ely* (68 NY2d 520 [1986]). But the holding in that case related to the authenticity of the tapes, not, as here, simple admissibility upon being identified by one of the participants. Indeed, *Ely* specifically states the rule the trial court failed to follow here: that "[t]he necessary foundation may be provided in a number of different ways" and that one such "well-recognized" foundation is "[t]estimony of a participant in the conversation that it is a complete and accurate reproduction of the conversation and has not been altered" (*id.* at 527, citing *People v McGee*, 49 NY2d 48, 60 [1979], *People v Arena*, 48 NY2d 944, 945 [1979], *United States v Sandoval*, 709 F2d 1553, 1555 [DC Cir 1983], and *United States v Buzzard*, 540 F2d 1383 [10th Cir 1976], *cert denied* 429 US 1072 [1977]). The majority does not suggest that this is no longer the law. Morever, we noted that chain of custody is "not a requirement as to tape recordings" (*Ely*, 68 NY2d at 527-528; *see also McGee*, 49 NY2d at 60).

Our decision in *Ely* was supported by an earlier precedent, *People v McGee* (49 NY2d 48 [1979]), where we held that, with respect to a tape recording, "[a] foundation may be established by a participant to the conversation who testifies that the conversation has been accurately and fairly reproduced. Proof

that the evidence has not been altered may be established in a similar fashion" (*id.* at 60 [citations omitted]).

It was also reversible error to exclude, as improper hearsay, testimony by plaintiff's brother about what defendant said on the audiotape. Defendant's statements were admissible as admissions of a party opponent (*see e.g.* 2 Broun, McCormick on Evidence § 254 [6th ed]). Indeed, the majority accepts that defendant's statements to plaintiff's brother were admissible, though it dismisses the objection to their exclusion as unpreserved and the error as harmless (*see* majority mem at 898).

## II.

I part with the majority most definitively with regard to the question whether the trial court's errors were harmless. In my view, the evidence that was improperly excluded was directly relevant to the question whether defendant initiated the prosecution, and did so falsely.

To recover for malicious prosecution, plaintiff had to establish, initially, "the commencement or continuation of a criminal proceeding by the defendant against the plaintiff" (*Smith-Hunter v Harvey*, 95 NY2d 191, 195 [2000]). Our case law makes clear that, to establish this first element, plaintiff must show that "the indictment was procured by fraud, perjury, suppression of evidence, or other bad-faith conduct" (majority mem at 898, citing *Colon v City of New York*, 60 NY2d 78, 83 [1983]).

Contrary to the majority opinion (*see* majority mem at 896 n), we *have* explained how a plaintiff in a malicious prosecution case may demonstrate that the defendant "commenced" the underlying criminal proceeding. Plaintiff may do so "by showing that the defendant did not make a full and complete statement of the facts either to the magistrate or to the District Attorney; has misrepresented or falsified the evidence, or else has kept back information or facts which might have affected the result" (*Hopkinson v Lehigh Val. R.R. Co.*, 249 NY 296, 300 [1928]). On the other hand,

> "[i]f a person disclose[s] fairly and truthfully to an officer whose duty it is to prosecute crime, all matters within his [or her] knowledge, which as a [person] of ordinary intelligence he [or she] is bound to suppose would have a material bearing upon the question of the innocence or guilt of the persons suspected, and leaves it to the prosecutor to act entirely upon [the prosecutor's] own judgment and

responsibility as a public officer, and does no more, he [or she] cannot be held answerable in an action for malicious prosecution, even if the officer comes to a wrong conclusion and prosecutes when [the prosecutor] ought not to do so" (*id.* at 300-301; *see also* PJI 3:50.2).[1]

While the quoted sentences from *Hopkinson v Lehigh Val. R.R. Co.* described the probable cause element within the context of that case, they have taken on a wider significance in subsequent case law. "New York law has long equated the civil defendant's failure to make a full and complete statement of the facts to the District Attorney or the court, or holding back information that might have affected the results, with that defendant's *initiation* of a malicious prosecution" (*Ramos v City of New York*, 285 AD2d 284, 299-300 [1st Dept 2001] [emphasis added], citing *Hopkinson v Lehigh Val. R.R. Co.*, 249 NY at 300; *see also e.g. Present v Avon Prods.*, 253 AD2d 183, 189-190 [1st Dept 1999] [citing *Hopkinson* for the proposition that "(o)ne who does no more than disclose to a prosecutor all material information within his knowledge is not deemed to be the initiator of the proceeding"]).

Moreover, the commencement of criminal proceeding element and the probable cause element are not as easily disentangled as the majority seems to assume. Although we have identified commencement as a separate element since at least *Broughton v State of New York* (37 NY2d 451, 457 [1975]), our earliest malicious prosecution cases make it clear that the gravamen of the tort is that "the defendant wickedly and maliciously and without probable cause gave false information . . . [causing prosecution] and that the proceedings terminated in plaintiff's favor" (*Al Raschid v News Syndicate Co.*, 265 NY 1, 3 [1934]; *see also Burt v Smith*, 181 NY 1, 5 [1905] ["(a) malicious prosecution is one that is begun in malice, without probable cause to

---

1. Supreme Court's jury instruction, which was drawn from PJI 3:50.2, accurately tracked this case law:

"If you find that the defendant fairly and truthfully disclosed to the District Attorney all matters within her knowledge that a reasonably prudent person would believe important on the question of plaintiff's guilt or innocence and that the decision to present the matter to the Grand Jury was made by the District Attorney, the defendant is not responsible for the prosecution. If, however, you find that the defendant directed the District Attorney to prosecute and gave the District Attorney information that the defendant knew to be false, the defendant is responsible for prosecution."

believe it can succeed, and which finally ends in failure"]). Similarly, the commencement of proceeding element and the probable cause element are considered to be a single element in the Restatement of Torts: "initiates or procures the proceedings without probable cause and primarily for a purpose other than that of bringing an offender to justice" (Restatement [Second] of Torts § 653 [a]).

Here, plaintiff was prepared to prove that defendant was responsible for his prosecution, by lying to the police. The evidence was directly relevant to whether defendant "commenced" the proceeding within the meaning of our case law. Contrary to the majority's analysis (see majority mem at 898), the fact that the ultimate decision whether or not to prosecute a case falls on the District Attorney's office, not the complainant, proves nothing. Under our case law, if the complainant engages in bad faith conduct that results in a prosecution, she has "commenced" the prosecution.

The majority surely does not mean to hold that one who lies to the police in order to cause a criminal prosecution is immunized from a malicious prosecution suit because a prosecutor, misled by the false information, chooses to pursue the case. Such a holding would essentially abolish the tort of malicious prosecution. When a complainant

> "has put in motion the officers of the law, . . . by his [or her] false and malicious statement it does not, either upon principle or authority, lay with him [or her] to say by way of defence that the injury resulting from the wrong committed by him [or her] would not have been consummated but for the innocent mistake of those imposed upon by him [or her]" (Dennis v Ryan, 65 NY 385, 389 [1875]).

The trial court both excluded the tape recording and refused to allow plaintiff's brother to testify about what defendant had told him. In doing so, the court effectively blocked all methods by which plaintiff could establish his case. As such, the error was not harmless.[2]

Therefore, I would reverse the Appellate Division's order.

---

2. Although my view of this case does not depend on it, I believe that the other evidentiary rulings raised by plaintiff were errors as well. As to the admission of the grand jury minutes, there is no dispute that they would have been admissible, and I believe they would have been particularly germane here where the very basis of plaintiff's claim is that defendant lied before the grand jury so that he would be prosecuted. Finally, the trial court's refusal to

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO and READ concur; Judge PIGOTT dissents and votes to reverse in an opinion in which Judge SMITH concurs.

Order affirmed, with costs, in a memorandum.

permit plaintiff to prove that defendant lied to obtain the order of protection that formed the basis of plaintiff's subsequent prosecution was an abuse of discretion, regardless of whether plaintiff challenged the order of protection when issued.