(April 22, 2010)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WILLIAM H. MULLER JR., Appellant. [899 NYS2d 425]—

Kavanagh, J. Appeal from a judgment of the County Court of Columbia County (Nichols, J.), rendered June 19, 2007, upon a verdict convicting defendant of the crime of murder in the first degree (two counts).

Defendant was charged by indictment with two counts of murder in the first degree in connection with the fatal shooting in June 2006 of his estranged wife's parents, Dennis Lynch (here-

inafter Lynch) and Carolyn Lynch in their Columbia County home. After a jury trial, defendant was convicted as charged and sentenced to life in prison without parole. Defendant now appeals, arguing that County Court erred by (1) precluding him from asserting as a defense at trial that at the time of the shooting, he was acting under the influence of an extreme emotional disturbance, (2) placing improper restrictions on the cross-examination of his estranged wife when she testified at trial, (3) permitting an inmate housed with him prior to trial in the Columbia County jail to testify that defendant had made gestures that constituted an admission of guilt, and (4) refusing to compel the prosecution to disclose recordings of telephone conversations involving defendant while he was incarcerated awaiting trial. Defendant also claims that the sentence imposed for these two murder convictions was harsh and excessive.

On the night of June 27, 2006, defendant went to the home of his in-laws armed with a loaded pump-action shotgun looking for his estranged wife. After he arrived at the premises, defendant was confronted by Lynch and, moments later, three shots were discharged from the shotgun mortally wounding Lynch and his wife. What transpired immediately prior to and at the time of the shooting was the subject of dramatically different testimony given at trial by defendant and his estranged wife. Defendant denied harboring any ill will toward his in-laws and claims that he went to their home to commit suicide in front of his wife who was seeking a divorce. He admits being armed with a loaded shotgun, but claims that the weapon accidentally discharged three times during a physical struggle that he had with Lynch shortly after he arrived at the premises. Defendant's wife, who was present in the home at the time of the shootings, claims that defendant came to her parents' home intending to kill her and, while there, executed her two parents when they sought to intervene on her behalf.

The principal issue raised by this appeal concerns County Court's decision to bar defendant from asserting as an affirmative defense that he was acting under the influence of an extreme emotional disturbance (hereinafter EED) when he fired the rounds from the shotgun that caused the death of his in-laws (see Penal Law § 125.25 [1] [a]; § 125.27 [2] [a]). This decision to preclude this defense from being offered at trial was prompted by defendant's failure during the months leading up to trial to file a notice regarding this defense as contemplated by statute and by his subsequent refusal to comply with conditions established by the court that would have permitted him to assert this defense at trial despite the defects in his notice.

A criminal defendant who intends to offer evidence in support of a psychiatric defense must file a notice to that effect within 30 days of his arraignment on the indictment (*see* CPL 250.10 [2]). This notice must "contain enough information to enable the prosecution and the court to discern the general nature of the alleged psychiatric malady and its relationship to a particular, proffered defense" (*People v Almonor*, 93 NY2d 571, 581 [1999]). Here, defendant filed a form entitled "Notice of Intent to Present Psychiatric Evidence," which failed to specify the psychiatric defense that he would pursue at trial and did not describe the mental infirmity upon which this claim would be based or how it related to any psychiatric evidence.[1]

Upon receipt of this notice—and over the next five months— the prosecution sent defendant's counsel a series of letters pointing out that the notice was not only untimely, but also inadequate and, as such, did not satisfy defendant's obligations under the statute.[2] When defendant failed to provide any additional information regarding the proposed defense, the prosecution on January 8, 2007—two months prior to the commencement of trial—filed a motion to preclude defendant from asserting any psychiatric defense at trial or from introducing any evidence regarding psychiatric treatment that defendant may have received prior to the incident. In an apparent response to this motion, defendant, on February 7, 2007—almost four months after his arraignment on the indictment—filed a one-page document entitled "CPL 250.10 Supplemental Notice," which stated that he would "present lay witness evidence only concerning the affirmative defense of extreme emotional disturbance." Again, defendant did not provide any details regarding the content of this proposed testimony nor did he identify the existence of any mental infirmity or what role such infirmity played in his decision to deliberately shoot and kill Lynch and Lynch's wife (*see People v Smith*, 1 NY3d 610, 612 [2004]; *People v Roche*, 98 NY2d 70, 75 [2002]; *People v LeFebvre*, 45 AD3d 1175, 1175-1176 [2007]; *see generally People v Ross*, 34 AD3d 1124, 1125 [2006], *lv denied* 8 NY3d 879 [2007]).

One month prior to trial, defendant's counsel for the first time disclosed that the EED defense he was seeking to assert

1. The notice was also untimely because it was not served on the prosecution until 32 days after defendant was arraigned on the indictment.

2. In a letter dated November 22, 2006, defense counsel acknowledged receipt of the prosecution's demands for more information regarding the proposed affirmative defense and stated, "I wish to assure you that there will be no last minute surprise regarding psychiatric evidence. You will be provided the specificity you seek in an amended CPL 250.10 (2) notice as it becomes available and *necessary*" (emphasis added).

was based upon defendant's history of depression, suicidal ideation and prior suicide attempts, and would be established by "the actual observation of the witnesses of the behavior of the defendant at those points in time. In other words, his actual attempts to—his actual threats or attempts to take his life. At this juncture, I don't even plan to submit the psychiatric record from the Ellis Hospital or Columbia Hospital because I would think they're superfluous. I don't need an expert, no one needs an expert in this case to understand that a defendant, or anybody else who is suffering from prolonged depression and has tried to commit suicide at least twice, is under extreme emotional disturbance."[3]

Despite the fact that defense counsel did not describe how defendant's depression and his attempts at suicide were causally related to the shooting and did not account for the significant delay incurred in providing this information to the prosecution, County Court decided to allow defendant to assert an affirmative defense at trial based on the existence of an EED. However, the court put in place certain conditions that had to be met by defendant or he would be precluded from raising this defense at trial. In that regard, the court specified that defendant had to provide the prosecution with an amended/supplemental notice in writing of its intent to assert this defense and to submit to a psychiatric evaluation by an expert employed by the prosecution (see CPL 250.10 [3]). When defendant failed to comply with either condition, and continued to refuse to disclose any records regarding psychiatric treatment he had received prior to the shootings or any relevant hospitalizations, County Court issued an order precluding him from offering an EED as an affirmative defense at trial and barred the admission of any lay testimony regarding his prior suicide attempts, depression or hospitalizations.[4]

Initially, we note that the notification process contained in the statute "is designed to create a format by which psychiatric evidence may be prepared and presented manageably and efficiently, eliminating the element of surprise. With that in mind

---

**3.** According to defense counsel, in April 2006 defendant was hospitalized at Columbia Hospital and Ellis Hospital after he allegedly attempted suicide. Defendant, despite repeated requests from the prosecution, has failed to provide the medical records generated by these hospitalizations or provide any documentation as to psychiatric treatment that he received during the relevant time period.

**4.** Defendant does not deny that the prosecution made timely demands for these materials and that he never sought a protective order relieving him from the obligation to provide the prosecution with these medical records (see CPL 240.30).

the Legislature has formulated a procedure that depends upon proper notification, adversarial examination, and *preclusion when appropriate*" (*People v Almonor*, 93 NY2d at 577-578 [emphasis added]; *see People v Berk*, 88 NY2d 257, 263-264 [1996], *cert denied* 519 US 859 [1996]; *People v Green*, 60 AD3d 1320, 1321 [2009], *lv denied* 12 NY3d 915 [2009]; *People v LeFebvre*, 45 AD3d at 1175-1176). Here, defendant not only filed a notice that was untimely and inadequate, but, throughout the period leading up to trial, he repeatedly ignored legitimate requests made by the prosecution for more information regarding the specifics of this psychiatric defense. As a result, County Court made a measured effort to balance the prosecution's need for this information with defendant's right to offer this defense at trial. Given this context, its decision to put in place certain conditions that had to be met for defendant to be relieved from the defects contained in his notice represented a sound exercise of the court's discretion, and defendant's failure to comply with these conditions left the court with no choice but to preclude him from asserting this affirmative defense (*see People v Almonor*, 93 NY2d at 581; *People v Aska*, 91 NY2d 979, 981 [1998]; *People v Berk*, 88 NY2d at 265-266; *People v Heath*, 49 AD3d 970, 972 [2008], *lv denied* 10 NY3d 959 [2008]; *People v Umali*, 37 AD3d 164, 165 [2007], *lv denied* 8 NY3d 991 [2007]; *People v Conley*, 11 AD3d 706, 707 [2004], *lv denied* 4 NY3d 742 [2004]; *People v Lewis*, 302 AD2d 322 [2003], *lv denied* 100 NY2d 540 [2003]).

Defendant argues that any preclusion order issued by County Court should have been limited to expert medical testimony that he sought to introduce in support of this psychiatric defense and should not have included lay testimony regarding his attempts at suicide or his chronic state of depression. In that regard, CPL 250.10 (5) provides that if a defendant refuses to submit to an examination by the prosecution's psychiatrist, the court may only preclude the defendant's expert psychiatric testimony and that all other evidence, if competent, shall be admitted with an appropriate instruction to the jury regarding the defendant's failure to cooperate with the prosecution in its examination. However, this statutory provision is based on the assumption that the defendant has otherwise complied with his or her statutory obligations and has not, as has this defendant, engaged in a course of conduct during the period leading up to trial that was clearly designed to deny the prosecution access to any meaningful information regarding the details of this proposed offense. "[T]he statutory language of preclusion for failure to comply with the notice provision contemplates a bar of the defense, in toto, in the absence of the requisite notice of

intent by the defense, not only the preclusion of expert testimony to support it" (*People v Diaz*, 62 AD3d 157, 165 [2009], *lv granted* 12 NY3d 924 [2009]). Based on these facts, we are of the view that County Court did not abuse its discretion in issuing an order that, in effect, precluded defendant from asserting a defense based on an EED.

Moreover, even if we were to conclude that County Court did not have an appropriate basis to preclude defendant from asserting this defense based on the existence of an EED, defendant would not have been prejudiced because he has never established that the requisite elements of such a defense in fact exist. In that regard, defendant sought to offer testimony from lay witnesses, as well as medical records to establish that at the time of the shootings he was suicidal and depressed. However, while expert testimony is not an essential prerequisite for establishing the existence of such a defense (*see People v Smith*, 1 NY3d at 612), defendant was still obligated to prove that a relevant connection existed between his claimed mental infirmity and his decision to deliberately shoot and kill two innocent people (*see id.*; *People v Roche*, 98 NY2d at 75; *People v Casassa*, 49 NY2d 668, 677-678 [1980], *cert denied* 449 US 842 [1980]). Not only has defendant failed to state how he would establish that such a connection existed, but his task in that regard was made even more problematic by statements he made after the shooting but prior to his arrest,[5] and sworn testimony he gave at trial, as well as arguments made on his behalf during the prosecution and on this appeal—all of which are manifestly inconsistent with the essential elements of this psychiatric defense. Throughout this process, defendant has consistently maintained that this shooting was accidental—that this pump action shotgun inadvertently discharged three times during his struggle with Lynch accidently killing Lynch and his wife—and has never acknowledged either personally or through counsel that he deliberately shot and killed the two victims while under the influence of an EED. In short, his contention that these shootings were the result of a tragic accident is so at odds with any claim that he deliberately shot and killed the two victims while under the influence of an EED, that it makes his assertion of such an affirmative defense inherently implausible, and underscores the legal insufficiency of the evidence previously submitted by him in support of it (*see People v Smith*, 1 NY3d at 612; *People v White*, 79 NY2d 900, 903 [1992]).

---

**5.** After the incident and before being arrested, defendant made a statement to his cousin to the effect that he went to the Lynch residence with a loaded shotgun, became involved in a struggle with Lynch and, during that struggle, the weapon discharged.

Defendant also argues that County Court erred by not allowing him to submit evidence regarding his prior suicide attempts and psychiatric hospitalizations to establish that he went to the victims' home to commit suicide, not murder. Initially, we note that the introduction of such evidence, assuming it was relevant, would have entitled the prosecution to access to any medical records regarding psychiatric treatment received by defendant before the shootings as well as those generated by his April 2006 hospitalizations. Defendant has never provided these records, and that failure would obviously have some impact upon the admissibility of such evidence. Moreover, defendant's failed attempts at suicide and prior hospitalizations were only marginally relevant to defendant's core contention made at trial, and County Court properly exercised its discretion in limiting the admissibility of such evidence.[6]

We find no error in the restrictions placed by County Court on defendant's cross-examination of his estranged wife, or that its rulings in some way prevented defendant from establishing that his wife was hostile towards him or that this hostility might have in some way affected her trial testimony (see People v Wallace, 60 AD3d 1268, 1269-1270 [2009], lv denied 12 NY3d 922 [2009]; People v Ortega, 292 AD2d 792, 793 [2002], lv denied 98 NY2d 679 [2002]). In this regard, we note that his wife was subjected to an extensive cross-examination at trial, which included questions regarding her relationship with another man and her request for equitable distribution of the parties' assets in a pending action for divorce. While some limits were placed on counsel by the court in his cross-examination of defendant's wife, it is simply inconceivable, given the attendant circumstances, that a juror would not recognize that his wife harbored an animus against defendant and would be hostile towards him (see People v Corby, 6 NY3d 231, 234 [2005]; People v Gosso, 41 AD3d 206, 207 [2007], lv denied 9 NY3d 876 [2007]; People v McNamara, 304 AD2d 908, 909 [2003]; People v Krug, 282 AD2d 874, 879 [2001], lv denied 98 NY2d 652 [2002]).

Furthermore, the prosecution was not obligated to provide defendant with recordings of taped telephone conversations he had with third parties while in jail awaiting trial. Such disclosure would be required if the prosecution intended to introduce the tape recordings into evidence at trial even if these recordings were not "made during the course of the criminal transaction" (CPL 240.20 [1] [g]). However, the prosecution did

---

**6.** Defendant was permitted to testify to a suicidal ideation at the time of the incident and was allowed to introduce evidence, if it existed, of any suicide attempts that occurred within four days of the shootings.

not seek to introduce any portion of these recordings as evidence-in-chief at trial but, instead, used these recordings to impeach or refresh the recollection of witnesses who participated in these conversations and testified at trial (*see People v Farmer*, 198 AD2d 805, 807 [1993], *lv denied* 83 NY2d 804 [1994]; *see also People v Perry*, 70 AD3d 1063, 1064 [2010]).

Defendant also claims that it was reversible error to allow Peter Rupp, his jail cellmate, to describe certain gestures he claimed defendant made while they discussed the shootings. The gestures as testified to by Rupp were admissible as an integral part of a conversation he had with defendant regarding the shootings (*see People v Campney*, 94 NY2d 307, 311-312 [1999]; *People v Lourido*, 70 NY2d 428, 433 [1987]). Moreover, County Court limited Rupp's testimony to a description of the gestures, as well as to when, how and in what context they were made, while refusing to allow the witness to testify to his interpretation of their meaning.

Finally, defendant's sentence was not harsh or excessive. He stands convicted of the intentional murder of his wife's parents in the presence of his two-year-old son. We know of no circumstance in this record, given the gravity of the underlying crimes, which would warrant a modification of the sentence imposed by County Court (*see People v Caruso*, 34 AD3d 863, 864-865 [2006], *lv denied* 8 NY3d 879 [2007]; *People v Walker*, 12 AD3d 1107, 1108 [2004], *lv denied* 4 NY3d 804 [2005]).

Peters, J.P., Malone Jr., McCarthy and Garry, JJ., concur. Ordered that the judgment is affirmed.

