*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  January 12, 2017                105224
_____

THE PEOPLE OF THE STATE OF
    NEW YORK,
                        Respondent,

        v                                   MEMORANDUM AND ORDER

JOSEPH DURHAM,
                        Appellant.
_____


Calendar Date:  November 15, 2016

Before:  Garry, J.P., Egan Jr., Devine, Clark and Mulvey, JJ.

_____


        Sandra McCarthy, Conflict Defender, Troy (Joseph Ahern of
counsel), for appellant.

        Joel E. Abelove, District Attorney, Troy (Vincent J.
O'Neill of counsel), for respondent.

_____


Clark, J.

        Appeal from a judgment of the County Court of Rensselaer
County (Ceresia, J.), rendered July 5, 2012, upon a verdict
convicting defendant of the crimes of criminal possession of a
weapon in the second degree and reckless endangerment in the
first degree.

        On April 29, 2011, at approximately 5:30 p.m., two police
officers and a K-9 dog pursued defendant on foot after he exited
the front passenger side of a vehicle that was subject to a
lawful traffic stop.  During the pursuit, a firearm was
discharged three times in the direction of one of the police
officers.  Defendant was ultimately apprehended and arrested by
law enforcement and he was thereafter charged with attempted

murder in the first degree, two counts of criminal possession of a weapon in the second degree and reckless endangerment in the first degree. Following a jury trial, defendant was convicted of criminal possession of a weapon in the second degree and reckless endangerment in the first degree. County Court sentenced him, as a second felony offender, to a prison term of 15 years, followed by five years of postrelease supervision, on his conviction for criminal possession of a weapon in the second degree and, as a second felony offender, to a consecutive prison term of 3½ to 7 years on his conviction for reckless endangerment in the first degree. Defendant appeals, and we affirm.

Defendant argues that County Court should have suppressed physical evidence, as well as a statement that he made to police following his apprehension, on the basis that the police did not have the requisite reasonable suspicion of criminal activity to lawfully pursue him once he fled. "Police pursuit of an individual 'significantly impede[s]' the person's freedom of movement and thus must be justified by reasonable suspicion that a crime has been, is being, or is about to be committed" (People v Holmes, 81 NY2d 1056, 1057-1058 [1993], quoting People v Martinez, 80 NY2d 444, 447 [1992]). "Flight alone, even if accompanied with equivocal circumstances that would justify a police request for information, does not establish reasonable suspicion of criminality and is insufficient to justify pursuit, although it may give rise to reasonable suspicion if combined with other specific circumstances indicating the suspect's possible engagement in criminal activity" (People v Reyes, 69 AD3d 523, 525-526 [2010], appeal dismissed 15 NY3d 863 [2010]; see People v Pines, 99 NY2d 525, 527 [2002]; People v Holmes, 81 NY2d at 1058; People v Smith, 140 AD3d 1396, 1397 [2016], lv denied 28 NY3d 936 [2016]).

Here, while on patrol in a marked K-9 police vehicle, two police officers initiated a lawful traffic stop after they observed a vehicle that did not have a license plate affixed to the front bumper but instead was displayed on the dashboard in an inconspicuous manner (see Vehicle and Traffic Law § 402 [1] [a]; People v Hale, 130 AD3d 1540, 1540 [2015], lv denied 26 NY3d 1088 [2015]; People v Newman, 96 AD3d 34, 40 [2012], lv denied 19 NY3d 999 [2012]; People v Brooks, 23 AD3d 847, 849 [2005], lv denied 6

NY3d 810 [2006]). At the time that they initiated the stop, the officers were also operating under the reasonable belief that the vehicle was being driven by an individual who was wanted on an outstanding arrest warrant for robbery in the first degree and who was also "named" as being involved in four shootings that had taken place over the previous four days. Despite the activation of the police vehicle's emergency lights and sirens, the vehicle did not stop and the police followed the vehicle for a number of blocks, observing it proceed through two stop signs, travel in the wrong lane of traffic and repeatedly pull toward the curb as if it was about to pull over but then pull back into traffic.[1]

Both officers testified that, during their ongoing attempt to stop the vehicle, they observed an individual seated in the front passenger seat "leaning forward as if he was going for the glove compartment area or the floor" and moving about in a manner that, because they could not see his hands, led them to believe that the individual may have been retrieving or secreting something. The vehicle eventually slowed and pulled toward the curb, at which point the individual exited the front passenger door, looked in the officers' direction, making brief eye contact, "reached down towards his waistband as if he was holding something" and fled, ignoring the officers' directions to stop. The officers each testified that they immediately recognized the individual to be defendant, who they knew was a person of interest in the recent shootings and a suspect in at least one of those shootings. Further, one of the officers testified that, because firearms are ordinarily carried on a person's waistband and given defendant's alleged involvement in the recent shootings, he feared that defendant was carrying a gun. As the situation unfolded, the officers developed a reasonable suspicion that defendant was engaged in criminal activity — that is, the unlawful possession of a weapon — and thus they were justified in pursuing defendant and releasing the K-9 dog to assist in their

_____

[1] These additional observed traffic violations provided further grounds for the traffic stop (see Vehicle and Traffic Law § 1172 [a]; People v Douglas, 42 AD3d 756, 757 [2007], lv denied 9 NY3d 922 [2007]; People v Davis, 32 AD3d 445, 445 [2006], lv denied 7 NY3d 924 [2006]).

efforts to stop and detain him (see People v Pines, 99 NY2d at 526-527; People v Curtis, 29 AD3d 316, 317 [2006], lv denied 7 NY3d 866 [2006]; People v Rivera, 286 AD2d 235, 235-236 [2001], lv denied 97 NY2d 760 [2002]). Although defendant raised issues as to the officers' credibility, we defer to County Court's determination to credit their testimony (see People v Belle, 74 AD3d 1477, 1479 [2010], lv denied 15 NY3d 918 [2010]; People v Harper, 73 AD3d 1389, 1389 [2010], lv denied 15 NY3d 920 [2010]). Therefore, County Court properly denied defendant's suppression motion. Furthermore, defendant did not preserve his contention that law enforcement used excessive force to stop and detain him, as he failed to raise it in his omnibus motion or at the suppression hearing (see People v Price, 112 AD3d 1345, 1345-1346 [2013]; People v Gomez, 193 AD2d 882, 883 [1993], lv denied 82 NY2d 708 [1993]).

Defendant also contends that his convictions were not supported by legally sufficient evidence and were against the weight of the evidence. In assessing whether a verdict is legally sufficient, we must consider the facts in the light most favorable to the People and determine whether "there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Danielson, 9 NY3d 342, 349 [2007] [internal quotation marks and citations omitted]; accord People v Denson, 26 NY3d 179, 188 [2015]). By contrast, in a weight of the evidence review, we first decide whether a different verdict would have been unreasonable and, if not, we then "'weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony'" to determine whether the trier of fact accorded appropriate weight to the evidence (People v Mateo, 2 NY3d 383, 410 [2004], cert denied 542 US 946 [2004], quoting People v Bleakley, 69 NY2d 490, 495 [1987]; see People v Cahill, 2 NY3d 14, 58 [2003]).

With respect to the charge of criminal possession of a weapon in the second degree, the People were required to prove that defendant possessed a loaded firearm outside of his home or place of business (see Penal Law § 265.03 [3]; People v LaDuke, 140 AD3d 1467, 1468 [2016]). The charge of reckless endangerment

in the first degree required proof that, "under circumstances evincing a depraved indifference to human life, [the defendant] recklessly engage[d] in conduct which create[d] a grave risk of death to another person" (Penal Law § 120.25; see People v Wells, 141 AD3d 1013, 1015 [2016]).  In cases involving a discharged weapon, the firing of a gun, without more, is insufficient to support a reckless endangerment conviction; there must be evidence demonstrating that the discharge created a grave risk of death to a person (see People v Davis, 72 NY2d 32, 36 [1988]; People v Stanley, 108 AD3d 1129, 1131 [2013], lv denied 22 NY3d 959 [2013]; People v Thompson, 75 AD3d 760, 762 [2010], lvs denied 15 NY3d 893, 894, 896 [2010]; People v Scott, 70 AD3d 978, 979 [2010], lvs denied 15 NY3d 778, 809 [2010]).

At trial, one of the police officers testified that, during the pursuit, defendant, followed by the K-9 dog, rounded the corner of a building and that, given the officer's training, he stopped at the corner and proceeded cautiously around it.  He stated that he was roughly 15 feet behind the K-9 dog at the time that he stopped and that, "[a]s [he] peered . . . out from the corner, [he] heard [gun]shots ring out . . . in [his] direction." The officer stated that, although he did not see the gun at the moment that it was discharged, once he rounded the corner he saw smoke, noticed the smell that accompanied the discharge of a firearm and, because of his training, was able to discern that the gun had been fired in his direction.  When defendant was ultimately apprehended, he stated that he had discarded the firearm during the pursuit.  A gun and spent shell casings were subsequently discovered in close proximity to where the K-9 dog had apprehended defendant and it was later determined that the recovered gun was loaded and operable.  The trial evidence further established that the spent shell casings found at the scene were the same type and caliber as those in the discarded firearm and that a bullet that was extracted from the license plate of a vehicle that was in the area had been fired from that gun.

While the officer closest to defendant and the K-9 dog testified that he believed that the gunshots were intended for the K-9 dog, the mens rea element of reckless endangerment in the first degree does not require proof that a defendant intended to

shoot at another person; it requires proof that, with "'utter disregard for the value of human life'" (People v Feingold, 7 NY3d 288, 296 [2006], quoting People v Suarez, 6 NY3d 202, 214 [2005]), he or she was "aware of and consciously disregard[ed] a substantial and unjustifiable risk that [a] result w[ould] occur or that [a particular] circumstance exist[ed]" and that the disregard of this risk "constitute[d] a gross deviation from the standard of conduct that a reasonable person would [have] observe[d] in the situation" (Penal Law § 15.05 [3]; see People v Mitchell, 94 AD3d 1252, 1254 [2012], lv denied 19 NY3d 964 [2012]). The trial evidence demonstrated that defendant was aware that law enforcement was in close pursuit behind the K-9 dog when he shot in their direction and disregarded the risk that one of the officers could be gravely injured. Accordingly, the conviction of reckless endangerment in the first degree is supported by legally sufficient evidence (see People v Heesh, 94 AD3d 1159, 1161-1162 [2012], lv denied 19 NY3d 961 [2012]; People v Yellen, 30 AD3d 634, 635-636 [2006], lv denied 8 NY3d 951 [2007]; People v Millan, 155 AD2d 621, 622-623 [1989], lv denied 75 NY2d 815 [1990]) and, although a contrary finding would not have been unreasonable, we are satisfied that the guilty finding was not against the weight of the evidence (see People v Mann, 63 AD3d 1372, 1373-1374 [2009], lv denied 13 NY3d 861 [2009]). Further, upon consideration of defendant's admission that he dropped the gun during the pursuit and since the discarded weapon and shell casings were discovered nearby, we are similarly satisfied that defendant's conviction for criminal possession of a weapon in the second degree is supported by legally sufficient evidence and was not against the weight of the evidence (see People v Hawkins, 110 AD3d 1242, 1243 [2013], lv denied 22 NY3d 1041 [2013]; People v Mann, 63 AD3d at 1373-1374).

Lastly, we are unpersuaded by defendant's sentencing challenges. County Court lawfully imposed consecutive sentences on defendant's convictions, as the trial evidence demonstrated that he knowingly and unlawfully possessed a loaded firearm before he opened fire (see People v Brown, 21 NY3d 739, 749-752 [2013]; People v Mitchell, 118 AD3d 1417, 1418-1419 [2014], lv denied 24 NY3d 963 [2014]; People v Rodriguez, 118 AD3d 451, 452 [2014], lv denied 24 NY3d 964 [2014]). Furthermore, considering defendant's criminal history and that his conduct evinced a

complete disregard for public safety and endangered the law enforcement officers involved in his pursuit, County Court's imposition of the maximum permissible sentence was not an abuse of discretion and we discern no extraordinary circumstances that would warrant a reduction of defendant's sentence (see People v Mann, 63 AD3d at 1374; People v Ryan, 46 AD3d 1125, 1128 [2007], lv denied 10 NY3d 939 [2008]).

To the extent that any of defendant's contentions have not been expressly addressed herein, they have been examined and found to be without merit.

Garry, J.P., Egan Jr., Devine and Mulvey, JJ., concur.

ORDERED that the judgment is affirmed.

ENTER:

Robert D. Mayberger
Clerk of the Court