People v Perkins (2022 NY Slip Op 01486)





People v Perkins


2022 NY Slip Op 01486


Decided on March 10, 2022


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:March 10, 2022

112209
[*1]The People of the State of New York, Respondent,
v
Curtis Perkins, Appellant.

Calendar Date:January 11, 2022

Before:Garry, P.J., Lynch, Pritzker, Colangelo and Ceresia, JJ.

Hegge & Confusione, LLC, Mullica Hill, New Jersey (Michael Confusione of counsel), for appellant.
Robert M. Carney, District Attorney, Schenectady (Peter H. Willis of counsel), for respondent.



Garry, P.J.
Appeal from a judgment of the Supreme Court (Coccoma, J.), rendered February 5, 2020 in Schenectady County, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, criminal possession of a weapon in the second degree (two counts), attempted assault in the first degree and reckless endangerment in the first degree.
This Court reversed a 2011 judgment convicting defendant of the crimes of attempted murder in the second degree, criminal possession of a weapon in the second degree (two counts), attempted assault in the first degree and reckless endangerment in the first degree (166 AD3d 1285, 1287-1289 [2018], lv denied 33 NY3d 980 [2019]). Following a new trial, another jury convicted defendant of the same counts. Supreme Court sentenced defendant, as a second felony offender, to a prison term of 20 years with five years of postrelease supervision on his attempted murder conviction and to lesser concurrent terms on the remaining convictions. Defendant appeals.

"When reviewing the legal sufficiency of the evidence, this Court must view the evidence in the light most favorable to the People and evaluate whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crimes charged" (People v Agudio, 194 AD3d 1270, 1271 [2021] [internal quotation marks and citations omitted]). To establish attempted murder in the second degree, the People had to prove that defendant intended to cause the death of another person and engaged in conduct which tended to effect the commission of such death (see Penal Law §§ 110.00, 125.25 [1]). More than thoughts or preparations are required; the defendant's acts must have come "dangerously near commission of the completed crime" of murder (People v Lendof-Gonzalez, 36 NY3d 87, 93 [2020] [internal quotation marks and citation omitted]). Additionally, "[a] person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25). "In cases involving a discharged weapon, the firing of a gun, without more, is insufficient to support a reckless endangerment conviction; there must be evidence demonstrating that the discharge created a grave risk of death to a person" (People v Durham, 146 AD3d 1070, 1073 [2017] [citations omitted], lv denied 29 NY3d 997 [2017]).[FN1]
The victim testified that, as he and two other men were waiting at a bus shelter, a man in a hoodie approached and pointed a gun at the victim's head from one foot away. As they moved slightly, the victim was able to see half of the man's face and recognized that it was defendant. Defendant looked like he was trying to squeeze the trigger, [*2]but the gun did not fire. He then backed up, fidgeted with the gun, raised it and fired several shots as the victim and one of the other men ran. The victim testified that he saw the flash from the first shot and felt something fly by his head, then heard two or three more shots as he ran. The two other men who were present could not identify defendant, but their testimony, although not identical to the victim's, was generally consistent with his version of events. Certain physical evidence and testimony of other witnesses likewise supported the victim's testimony, including that defendant was shooting in the direction that the victim and his friend were running. Accepting the victim's testimony and other supporting evidence as true, which we must when viewing the evidence in a light most favorable to the People, the evidence was legally sufficient to establish that defendant was the person wielding the gun, he had the requisite intent to kill the victim, he attempted to murder the victim when the gun jammed and again when he fired shots (see People v Terry, 196 AD3d 840, 842-845 [2021], lvs denied 37 NY3d 1027, 1030 [2021]), and defendant evinced a depraved indifference to human life and recklessly endangered the lives of the two other men when he fired shots in their direction (see People v Serrano, 173 AD3d 1484, 1486 [2019], lvs denied 34 NY3d 937, 939 [2019]; People v Maeweather, 172 AD3d 1646, 1647-1648 [2019], lv denied 34 NY3d 1017 [2019]).
Defendant contends that he was improperly prejudiced by Supreme Court allowing the People to introduce a recording of a phone conversation that he allegedly had while incarcerated. "The predicate for admission of tape recordings in evidence is clear and convincing proof that the tapes are genuine and that they have not been altered" (Grucci v Grucci, 20 NY3d 893, 897 [2012] [internal quotation marks and citation omitted]; see People v Lancaster, 121 AD3d 1301, 1304 [2014], lv denied 24 NY3d 1121 [2015]), as well as "the identity of the speakers on the tape" (People v Lancaster, 121 AD3d at 1304 [internal quotation marks and citation omitted]). "[A] speaker's identity may be proven through circumstances surrounding the recorded conversation, which must include sufficient indicia of reliability, such as the substance of the conversation confirming the identity of the party" (People v Sostre, 172 AD3d 1623, 1625 [2019], lv denied 34 NY3d 938 [2019] [internal quotation marks and citations omitted]). "[W]hile a party to a taped conversation can identify the speakers, identity and authenticity are separate facets of the required foundation" (Grucci v Grucci, 20 NY3d at 897 [internal quotation marks and citation omitted]).
The technology officer for the sheriff's office testified about the jail phone system, including how calls were made and stored, and that he created the recording from that system, which did not allow calls to be altered. Only defendant and five other individuals incarcerated in [*3]defendant's cell block would have had access to the phone from which the call was made. Further, the male voice on the phone call stated that the friend of his accuser had testified that day "but he didn't see my face." Court records established that defendant's first trial was the only local criminal trial at which evidence had been received that day, and it included testimony by the victim's friend that he had been with the victim in the bus shelter when a man pointed a gun and shot at them but he could not recognize defendant's face due to the hoodie. One of defendant's friends testified that she did not recall the exact date of a phone call with defendant while he was in the local jail, but she recognized his voice on the recording and the tape accurately represented a conversation between the two of them. Defendant's former girlfriend similarly testified that she recognized defendant's voice on the recording. The People provided an adequate foundation for the recording of the phone call by submitting evidence about how the recording was generated, that the recording was unaltered and that defendant was one of the speakers in the recording based on the content of the conversation and the identification of his voice by witnesses who knew him well, including the other party to the conversation (see People v Lancaster, 121 AD3d at 1304; People v Myers, 87 AD3d 826, 828 [2011], lv denied 17 NY3d 954 [2011]). Thus, Supreme Court did not err in admitting the recording.
Defendant argues that the People substantially interfered with a defense witness's choice to testify for defendant. Although the People have an "obligation to warn potential witnesses of their possible liability for false statements under oath[,] . . . such warnings must not be emphasized to the point where they are transformed instead into instruments of intimidation" (People v Shapiro, 50 NY2d 747, 761-62 [1980]). "[S]ubstantial interference by the [People] with a defense witness'[s] free and unhampered choice to testify violates due process" (id. at 761). Nevertheless, "not every contact between a government agent and a potential defense witness constitutes a substantial interference with the choice to testify" (People v Webb, 195 AD2d 614, 615 [1993] [internal quotation marks and citations omitted], lv denied 82 NY2d 808 [1993]).
The People did not use perjury as a threat to intimidate defendant's alibi witness; rather, they noted that the witness himself had previously used the word "perjury" to demonstrate concerns he had regarding his potential testimony. Despite the People having met with the witness before trial and then subjecting him to a grueling cross-examination at trial, the witness consistently testified on direct examination, cross-examination and re-direct examination that defendant was with him during the time that the incident occurred. Defendant was not deprived of a fair trial or his constitutional right to present witnesses, as the People's words [*4]and actions did not intimidate the witness, impair his ability to choose to testify on defendant's behalf or dissuade him from testifying (compare People v Shapiro, 50 NY2d at 761-762; United States v Morrison, 535 F2d 223, 226-229 [3d Cir 1976]). Moreover, defendant's rights were not violated by the People's efforts to impeach the witness's credibility by cross-examining him regarding his own prior crimes (see People v Ocasio, 47 NY2d 55, 59-60 [1979]; People v Brannon, 199 AD3d 826, 826 [2021]; see also People v Smith, 27 NY3d 652, 660 [2016]).
Although defense counsel did not object to most of the People's questions to the alibi witness, defendant has failed to establish the likelihood of success for many of the unmade objections or the absence of strategic or other legitimate explanations for counsel's allegedly deficient conduct, which is required for defendant to demonstrate that he was deprived of the effective assistance of counsel (see People v Bombard, 187 AD3d 1417, 1420 [2020]; see also People v Blair, 121 AD3d 1570, 1571 [2014]). Viewing counsel's performance in its totality, defendant received meaningful representation (see People v Bowen, 185 AD3d 1219, 1221 [2020]). We have reviewed defendant's remaining contentions and find them to be without merit.
Lynch, Pritzker, Colangelo and Ceresia, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant does not challenge the legal sufficiency of the evidence supporting his remaining convictions. His weight of the evidence argument is not properly before us, as it was raised for the first time in his reply brief (see People v Ford, 69 NY2d 775, 777 [1987]; People v Ackerman, 173 AD3d 1346, 1348-1349 [2019], lv denied 34 NY3d 949 [2019]).