People v Bender (2025 NY Slip Op 01678)

People v Bender

2025 NY Slip Op 01678

Decided on March 20, 2025

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 20, 2025

113219 CR-22-2119
[*1]The People of the State of New York, Respondent,
v
Donald Bender, Appellant.

Calendar Date:January 7, 2025

Before:Clark, J.P., Reynolds Fitzgerald, Ceresia, McShan and Powers, JJ.

Powers & Santola, LLP, Albany (Michael J. Hutter of counsel), for appellant.
Lee C. Kindlon, District Attorney, Albany (Daniel J. Young of counsel), for respondent.

Ceresia, J.
Appeals (1) from a judgment of the County Court of Albany County (Andra Ackerman, J.), rendered July 27, 2021, upon a verdict convicting defendant of the crime of reckless endangerment in the first degree, and (2) by permission, from an order of said court, entered October 18, 2022, which denied defendant's motion pursuant to CPL 440.10 to vacate the judgment of conviction, without a hearing.
On the morning of June 27, 2018, defendant was driving on Central Avenue, a four-lane road with a center turning lane, in the Town of Colonie, Albany County. Eyewitnesses observed defendant's vehicle strike three other vehicles, causing one to flip over, before defendant's vehicle ultimately left the road and crashed into a house. As a result, defendant was charged by indictment with reckless endangerment in the first degree and driving while ability impaired by drugs. The matter proceeded to a jury trial and, following dismissal of the latter charge, the jury convicted defendant of the former. Defendant was thereafter sentenced to an indeterminate prison term of 2&frac13; to 7 years. He later moved pursuant to CPL article 440 to vacate the conviction on constitutional and statutory speedy trial grounds, and County Court denied the motion without a hearing. Defendant appeals from the judgment of conviction and, by permission, from the denial of his motion. We affirm.
Defendant first argues that his conviction of reckless endangerment in the first degree is not supported by legally sufficient evidence and is against the weight of the evidence because, although he concededly acted recklessly, the proof did not show that he did so with depraved indifference to human life. "[D]epraved indifference is best understood as an utter disregard for the value of human life — a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (People v Suarez, 6 NY3d 202, 214 [2005]; see People v Feingold, 7 NY3d 288, 294, 296 [2006]; People v Durham, 146 AD3d 1070, 1073 [3d Dept 2017], lv denied 29 NY3d 997 [2017]). Instances of depraved indifference " 'are highly fact-specific and dependent upon the individual defendant's particular mental state' " — which, while potentially difficult to establish, may be proved with circumstantial evidence (People v Maldonado, 24 NY3d 48, 58 [2014], quoting People v Heidgen, 22 NY3d 259, 276 [2013], cert denied 574 US 1063 [2014]).
The trial evidence revealed the following. The morning in question was sunny and clear, and traffic was heavy on Central Avenue. Defendant, who was driving a sport utility vehicle (hereinafter SUV) in an eastbound direction toward the City of Albany, was seen weaving between the lanes of traffic. Defendant then drove the SUV sharply out of its lane and struck a car being towed on a flatbed behind a tow truck. This occurred with such force that the SUV was lifted up onto the flatbed and became lodged upon it for 8 to 10 seconds. When the tow truck driver noticed [*2]what was happening, he began to pull his truck off of Central Avenue, whereupon the SUV broke away and, according to a witness, "all the molding fell off in the road." The tow truck driver also observed that defendant's front passenger tire was flat. Nevertheless, defendant accelerated and continued weaving through traffic.
Approximately a minute and a half later, defendant rear-ended a minivan so powerfully that the driver's head hit the roof, causing a concussion and severe whiplash. After that impact, the minivan driver tried to steer his vehicle out of defendant's path but he could feel the SUV pushing him forward. An eyewitness noted that defendant appeared to be intentionally "hitting [the minivan], again and again and again," as he was "pushing [the minivan] down Central Avenue." This witness could see defendant inside the SUV with his eyes open, his hands on the steering wheel and "a look of rage on his face." The minivan driver was eventually able to pull into the center turning lane, after which defendant drove off.
Shortly thereafter, the driver of a sedan was proceeding along Central Avenue when she heard car horns blaring in the distance behind her. She then heard a loud boom and felt a hard impact from the SUV as it struck the driver's side of her vehicle, propelling her forward. As the sedan driver attempted to get out of defendant's way, she looked over and could see defendant's hands on the steering wheel, and she watched as he steered toward her again. The SUV then struck the sedan a second time, forcing it up onto the curb, where it crashed into a fire hydrant and flipped over. The sedan came to rest with the hydrant having pierced its roof, about one foot from the driver's head, as she was hanging upside down. The driver was able to roll down her broken window and crawl out.
Next, the SUV left Central Avenue, went into a motel parking lot area and through some trees, before crashing into a house, with the front end of the SUV becoming lodged in the house's basement. Directly above the SUV, a 12-year-old girl was in her bedroom, and she told her father that a car had just crashed into the house below her window. Defendant exited the SUV and began yelling at a gathering crowd of onlookers, lunging at them and swinging a Bible toward them. When a police officer approached to handcuff defendant, he flipped forward onto the ground and the officer had to wrestle him for a few seconds. Data collected from the SUV's airbag control module revealed that the vehicle's brake was not engaged at all during the eight seconds prior to the final crash and that, over the course of its final tenth of a mile of travel, the gas pedal was fully depressed.
Defendant presented testimony of a doctor who diagnosed him, approximately seven months after the charged crimes occurred, with mild obstructive sleep apnea and excessive daytime sleepiness. The doctor testified that defendant had most likely suffered from these conditions for more than a year [*3]prior to the diagnoses. Although the doctor advised defendant not to drive following these diagnoses, the doctor also testified that it is "very difficult" to fall asleep while driving. A nurse practitioner who treated defendant for his sleep issues after he was diagnosed recommended that he not drive, but further explained that falling asleep while driving happened in only about 10 to 30 patients of the thousands her office treated per year.
The foregoing evidence, viewed in the light most favorable to the People, was legally sufficient to establish that defendant acted with depraved indifference to human life. Testimony from multiple eyewitnesses indicated that defendant, fully awake and bearing an expression of rage, drove indiscriminately along a heavily trafficked road and essentially played an extreme game of bumper cars with his fellow motorists. In so doing, defendant put countless lives at risk and indeed left serious crashes in his wake. Defendant never stopped or pulled over after any of his collisions. Instead, he continued on each time, stopping only when his vehicle finally crashed into a house. We note that defendant's actions herein are in many respects akin to driving along a crowded sidewalk, which is considered to be one of the quintessential examples of depraved indifference (see People v Heidgen, 22 NY3d at 276; People v Suarez, 6 NY3d 202, 214 [2005]). Accordingly, it is our conclusion that the evidence adduced at trial sufficiently demonstrated "that defendant recklessly engaged in conduct that created a grave risk of death to others, with an utter disregard for whether any harm came to those [ ]he imperiled" (People v Heidgen, 22 NY3d at 278).
Defendant attempts to distinguish this case from other cases of depraved indifference on the basis that, unlike here, those other cases involved circumstances such as running red lights, driving into oncoming traffic or traveling well in excess of the speed limit (see e.g. People v Herrera, 202 AD3d 517, 517 [1st Dept 2022], lv denied 38 NY3d 1134 [2022]). However, we emphasize that each case must be decided on its own unique set of facts (see People v Heidgen, 22 NY3d at 276). The significance of factors such as those highlighted by defendant is that they can serve to demonstrate that a person appreciated and consciously disregarded a serious risk of death to others while persisting in reckless conduct. As held above, the trial evidence in this case established precisely that.
Regarding defendant's weight of the evidence challenge, we are similarly unpersuaded. Even assuming for the sake of argument that a different verdict would not have been unreasonable, defendant's conviction is amply supported by the evidence (see People v Doane, 212 AD3d 875, 880 [3d Dept 2023], lv denied 39 NY3d 1154 [2023]; People v Serrano, 200 AD3d 1340, 1345-1346 [3d Dept 2021], affd 38 NY3d 1180 [2022]).
Defendant also contends that County Court erred in prohibiting him from offering certain psychiatric [*4]evidence. A defendant's constitutional right to present a defense must be carefully guarded, and, generally speaking, trial courts should be mindful that preclusion is to be ordered sparingly, particularly when a lesser sanction — such as a brief adjournment — will suffice (see generally People v Sidbury, 42 NY3d 497, 507 [2024]). That said, this case presents as one where preclusion did not constitute an abuse of discretion.
When it comes to the presentation of a psychiatric defense, certain procedures are required to be followed prior to trial; namely, within 30 days after entry of a plea of not guilty to an indictment, a defendant must serve upon the People and file with the court a written notice of his or her intention to introduce psychiatric evidence (see CPL 250.10 [2]; People v Silburn, 31 NY3d 144, 153-154 [2018]). The purpose of this requirement is "to eliminate surprise and promote fairness at trial by allowing the People, upon defendant's timely notice, the opportunity pretrial to obtain otherwise privileged psychiatric evidence to rebut defendant's affirmative use of the evidence at trial" (People v Silburn, 31 NY3d at 157). In the event that a defendant fails to file a CPL 250.10 notice within the time allowed, a trial court, in its discretion, may permit the late filing of such a notice in the interest of justice and for good cause shown (see CPL 250.10 [2]; People v Wells, 101 AD3d 1250, 1251 [3d Dept 2012], lv denied 20 NY3d 1066 [2013]).
Here, it is undisputed that defendant did not file a timely notice pursuant to CPL 250.10. Thus, as "[t]he decision whether to permit psychiatric evidence despite a failure to provide timely notice lies within the sound discretion of the trial court" (People v Bourne, 46 AD3d 1101, 1103 [3d Dept 2007] [internal citation omitted], lv denied 10 NY3d 762 [2008]; see People v Silburn, 31 NY3d at 160), the issue distills to whether County Court committed an abuse of that discretion when it declined defendant's request to make a late filing. We find that it did not.
Approximately a year and a half after defendant was arraigned, and five weeks before trial, defense counsel learned of a supposed connection between defendant's bipolar disorder and his sleep disorder. Despite that, no application for permission to file a late notice was made at that time. Rather, it was not until less than a week before trial, and then only in response to a motion by the People to preclude psychiatric evidence, that defendant finally cross-moved to file a late notice. Critically missing from defendant's application was any showing of good cause for waiting until essentially the eve of trial before attempting to obtain the requisite court permission (see People v Durham, 148 AD3d 1293, 1296 [3d Dept 2017], lv denied 29 NY3d 1091 [2017]; People v Damanski, 39 AD3d 1023, 1024 [3d Dept 2007], lv denied 9 NY3d 864 [2007]). Although we are mindful that defense counsel asserted that he had telephoned the prosecutor upon learning [*5]the new information, any oral discussions that may have occurred did not relieve defendant of his obligation to make a formal written motion for leave to file a late notice, and as a result do not constitute good cause for the delay.
Defendant also failed to demonstrate that the proposed psychiatric defense had any merit (see People v Taglianetti, 183 AD3d 1233, 1233 [4th Dept 2020], lv denied 35 NY3d 1049 [2020]). In that regard, defendant never disclosed the nature of the anticipated testimony beyond a vague and conclusory assertion that the bipolar diagnosis played a role in the sleep disorder, and defendant's proposed notice itself was patently insufficient as it shed no light on the testimony to be offered (see People v Almonor, 93 NY2d 571, 581 [1999]; People v Hanifin, 77 AD3d 1181, 1183 [3d Dept 2010]; People v Muller, 72 AD3d 1329, 1333 [3d Dept 2010], lv denied 15 NY3d 776 [2010]). Therefore, defendant's submissions did not provide adequate information to allow County Court and the People to understand the alleged correlation between the two disorders (see People v Almonor, 93 NY2d at 581).
Given the lack of good cause and failure to identify any merit, it cannot be said that County Court abused its discretion in declining defendant's application to serve late notice of psychiatric evidence pertaining to the supposed, yet unspecified, impact of defendant's bipolar disorder on his sleep disorder (see People v Taglianetti, 183 AD3d at 1233; People v Hanifin, 77 AD3d at 1183; People v Muller, 72 AD3d at 1333).[FN1] In reaching this conclusion, we note that, consistent with the crux of his defense that he had fallen asleep during the incident in question, defendant was in fact permitted to present evidence of his sleep disorder.
Defendant's remaining contentions on his direct appeal do not warrant extended discussion. Defendant was not denied his right to a fair trial when the People mentioned in their opening remarks that he was impaired by marihuana while driving, and then failed to adduce proof of such impairment. Noting that, at the time of the opening statement, the charge of driving while ability impaired by drugs was still pending, it was not improper for the People to comment on what they expected the evidence to show. The record does not reflect that the People acted in bad faith, nor was defendant unduly prejudiced, as County Court instructed the jury to disregard any reference to defendant's alleged impairment subsequent to that charge having been dismissed (see People v Bramble, 81 AD3d 968, 968-969 [2d Dept 2011], lv denied 16 NY3d 893 [2011]). Further, County Court did not err in reserving decision on defendant's motion to dismiss the charge of driving while ability impaired by drugs until after the close of defendant's case rather than making this ruling earlier, at the conclusion of the People's proof (see CPL 290.10 [1]). With respect to defendant's challenge to the severity of his sentence, it is moot inasmuch as he has been [*6]released from prison and discharged from parole (see People v Thomas, 215 AD3d 1052, 1054 [3d Dept 2023], lv denied 40 NY3d 931 [2023]). Were we to rule on this issue, we would find that the sentence was not unduly harsh or severe, in light of the serious nature of defendant's conduct which endangered many people and indeed resulted in considerable injuries to one victim.
Turning finally to defendant's appeal from the order denying his CPL article 440 motion, defendant asserts that his constitutional and statutory speedy trial rights were violated. However, as defendant concedes, his failure to raise this issue in a pretrial motion to dismiss the indictment renders the matter unpreserved (see CPL 210.20 [1] [g]; [2]; People v Lawrence, 64 NY2d 200, 203-204 [1984]; People v Bennett, 143 AD3d 1008, 1010 [3d Dept 2016]; People v Denis, 276 AD2d 237, 247 [3d Dept 2000], lv denied 96 NY2d 782 [2001]). In any event, the argument is without merit as defense counsel waived defendant's speedy trial rights (see People v Hinds, 217 AD3d 1138, 1141 [3d Dept 2023], lv denied 40 NY3d 951 [2023]; People v Wheeler, 159 AD3d 1138, 1142 [3d Dept 2018], lv denied 31 NY3d 1123 [2018]). To the extent that defendant contends that counsel was not authorized to effectuate such a waiver, the decision to waive speedy trial rights is not so "fundamental . . . that it cannot be made by counsel" alone (People v Wheeler, 159 AD3d at 1142 [internal quotation marks and citation omitted]). Moreover, the particular reason advanced by defendant in insisting that counsel inappropriately waived his rights — that he was never interested in entertaining a guilty plea — is belied by the record, which reveals that he requested an adjournment on at least one occasion to consider a plea offer.
Reynolds Fitzgerald and McShan, JJ., concur.
Clark, J.P. (concurring in part and dissenting in part).
We concur with most of the majority's conclusions regarding defendant's challenges on direct appeal, and fully with their decision addressing defendant's appeal from the denial of his CPL article 440 motion. We also agree with the majority's recitation of the relevant facts underlying defendant's conviction for reckless endangerment in the first degree. However, in our view, those facts are not legally sufficient to support said conviction and, as such, we respectfully dissent on that issue.
Defendant concedes that, throughout the ordeal detailed by the majority, he behaved recklessly, but he argues that the People's proof was legally insufficient to establish that he acted with the requisite mens rea of depraved indifference to human life. We agree. "When reviewing a legal sufficiency claim, we must determine whether the evidence, viewed in the light most favorable to the People, could lead a rational trier of fact to conclude that each and every element of the charged crime had been proven beyond a reasonable doubt" (People v Shamsuddin, 167 AD3d 1334, 1334 [3d Dept 2018] [internal quotation [*7]marks and citations omitted], lv denied 33 NY3d 953 [2019]; see People v Novak, 148 AD3d 1352, 1354 [3d Dept 2017], lv denied 29 NY3d 1084 [2017]). "A person is guilty of reckless endangerment in the first degree when, under circumstances evincing a depraved indifference to human life, he [or she] recklessly engages in conduct which creates a grave risk of death to another person" (Penal Law § 120.25). Depraved indifference to human life "is best understood as an utter disregard for the value of human life — a willingness to act not because one intends harm, but because one simply doesn't care whether grievous harm results or not" (People v Suarez, 6 NY3d 202, 214 [2005]; see People v Feingold, 7 NY3d 288, 296 [2006]). This mens rea is "extremely difficult" to prove and requires a "highly fact-specific [showing that is] dependent upon the individual defendant's particular mental state" (People v Heidgen, 22 NY3d 259, 276 [2013], cert denied 574 US 1063 [2014]; see People v Williams, 206 AD3d 1282, 1284 [3d Dept 2022]). The People must go beyond showing a defendant's "willing[ness] to take a grossly unreasonable risk to human life" and establish that he or she simply "does not care how the risk turns out" (People v Maldonado, 24 NY3d 48, 53 [2014] [internal quotation marks and citation omitted]). Indeed, "depraved indifference is embodied in conduct that is so wanton, so deficient in a moral sense of concern, so devoid of regard [for] the life or lives of others, and so blameworthy as to render the actor as culpable as one whose conscious objective is to kill" (People v Suarez, 6 NY3d at 214 [internal quotation marks and citation omitted]). "Quintessential examples [include] firing into a crowd; driving an automobile along a crowded sidewalk at high speed; opening the lion's cage at the zoo; placing a time bomb in a public place; poisoning a well from which people are accustomed to draw water; opening a drawbridge as a train is about to pass over it and dropping stones from an overpass onto a busy highway" (id. [internal citations omitted]; accord People v Heidgen, 22 NY3d at 276).
As the majority details, on the morning of June 27, 2018, defendant was driving his vehicle in the Town of Colonie, Albany County when he collided with several vehicles — causing one to flip over — before hitting a curb and crashing into the foundation of a house. We acknowledge that the People were able to rely on the circumstantial evidence surrounding defendant's conduct to establish that he acted with the requisite mens rea of depraved indifference to human life (see People v Heidgen, 22 NY3d at 279). Nevertheless, in reviewing these particular circumstances, we believe there is insufficient evidence to show that he was aware of, appreciated and disregarded the risks caused by his behavior (see id.). It is uncontroverted that defendant was driving recklessly and that, in doing so, he caused significant property damage as well as various degrees of injury to the victims[*8]. However, throughout this ordeal, which lasted less than five minutes and spanned less than half a mile, defendant was not driving well in excess of the posted speed limit,[FN2] and there is no evidence that he ever drove against oncoming traffic or failed to obey traffic lights (see People v Maldonado, 24 NY3d at 50-51; People v Williams, 206 AD3d at 1284-1287; People v Jakobson, 119 AD3d 815, 819 [2d Dept 2014]; compare People v Heidgen, 22 NY3d at 267-274). Even viewing the particular circumstances here in the light most favorable to the People, we do not believe that this case presents one of the rare circumstances where "the mens rea of depraved indifference . . . [is] established by risky behavior alone" (People v Maldonado, 24 NY3d at 53). As the circumstantial evidence was not sufficient to allow a rational trier of fact to find, beyond a reasonable doubt, that defendant had the requisite mens rea, and due to the lack of evidence regarding defendant's state of mind, we would find that defendant's conviction for reckless endangerment in the first degree is not supported by legally sufficient evidence (see id. at 53-57; People v Williams, 206 AD3d at 1284-1287; compare People v Heidgen, 22 NY3d at 267-274; People v Edwards, 182 AD3d 929 [3d Dept 2020], affd 36 NY3d 946 [2020]). Nevertheless, as the lesser included offense of reckless endangerment in the second degree is supported by legally sufficient evidence and not contrary to the weight of the evidence, we would modify the judgment, reducing defendant's conviction accordingly, and would then remit the matter for resentencing (see Penal Law § 120.20; CPL 470.20 [4]; People v Verneus, 184 AD3d 678, 683 [2d Dept 2020]; People v Harris, 128 AD3d 1172, 1173 [3d Dept 2015]).
Powers, J., concurs.
ORDERED that the judgment and the order are affirmed.

Footnotes

Footnote 1: We disagree with defendant that, during cross-examination of a defense witness, the People opened the door to the introduction of the precluded psychiatric evidence (compare People v George, 199 AD3d 1064, 1066 [3d Dept 2021], lv denied 37 NY3d 1146 [2021]).

Footnote 2: According to crash data from defendant's vehicle, he was traveling between 48 and 49 miles per hour in the five seconds preceding the last crash, except that the vehicle registered a speed of 57 miles per hour in the last second, likely as a result of the vehicle going airborne before crashing into the house. Video evidence from public transit buses in the vicinity showed that the posted speed limit was 40 miles per hour.